## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 06-10798 (KG) |
| RESORT OF PALM BEACH, LLC., | ) | |
| | ) | **Objection Deadline:  January 22, 2007** |
| Debtor. | ) | |
| | ) | **Re:  Docket Nos. 176, 194 and 207** |

### MOTION OF JEFFREY B. COHEN AND INSURANCE DESIGNERS OF MARYLAND TO WITHDRAW THE REFERENCE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT <u>FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF</u>

For the reasons in the attached memorandum of law, Jeffrey B. Cohen and Insurance Designers of Maryland, Inc. request that the District Court withdraw the reference of the above-referenced contested matter pursuant to 28 U.S.C. § 157(d).

DATED:  January 11, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:          loizides@loizides.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 06-10798 (KG) |
| RESORT OF PALM BEACH, LLC., | ) |  |
|  | ) | **Objection Deadline: January 22, 2007** |
| Debtor. | ) |  |
|  | ) | **Re: Docket Nos. 176, 194 and 207** |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JEFFREY B. COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. TO WITHDRAW THE REFERENCE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF

Christopher D. Loizides (No. 3968)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance Designers of Maryland, Inc.*

DATED: January 11, 2007

## TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..................1

SUMMARY OF ARGUMENT .......................................................................................1

STATEMENT OF FACTS ..............................................................................................2

A. Cohen's and IDMD's Investments in Resort and Resort's Failure to Honor Its
   Obligations to Them ...............................................................................................2

B. Resort's Bankruptcy Filing ....................................................................................4

C. The Stay Violation Motion......................................................................................5

    1. The Letter to Members Informing Them of the Bankruptcy Filing and the
   Derivative Action.................................................................................................6

    2. Alleged Communications with Resort's Insurance Underwriters .........................7

    3. Motion Filed in the Florida Action .....................................................................8

ARGUMENT..................................................................................................................8

I. STANDARD FOR WITHDRAWAL OF THE REFERENCE ....................................8

II. THE STAY MOTION REQUIRES THE CONSIDERATION OF THE FIRST
    AMENDMENT OF THE U.S. CONSTITUTION .....................................................9

III. THE MOTION IS TIMELY ..................................................................................15

IV. WITHDRAWAL AS TO CLAIMS AGAINST IDMD...........................................16

CONCLUSION AND RELIEF REQUESTED .............................................................17

# TABLE OF AUTHORITIES

## Federal Cases

Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 86 (3d Cir. 1988)............. 12
Gordon v. Dennis Burlin Sales, Inc., 174 B.R. 257, 259-260 (Bankr. N.D. Ohio 1994) ............. 12
In re Andrus, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995) ....................................................... 13
In re Camden Ordinance Manufacturing of Arkansas, Inc., 245 B.R. 794 (Bankr. E.D. Pa. 2000) ................................................................................................................................................ 9
In re Crudup, 287 B.R. 358, 363 (Bankr. E.D.N.C. 2002) .......................................................... 13
In re Gulf Coast Orthopedic Center, 20 B.R. 258, 261-62 (Bankr. M.D. Fla 1997) ................... 10
In re Marvel Entertainment Group, 209 B.R. 832. 838 (D. Del. 1997) ....................................... 14
In re National Service, 742 F.2d 859, 860 (5th Cir. 1984) ........................................................ 10
In re Outlaw, 66 B.R. 413, 416 (Bankr. E.D.N.C. 1986)............................................................ 12
In re Sechuan City, 96 B.R. 37, 43 (E.D. Pa. 1989) ................................................................. 13
In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986) ................................. 9, 11, 12
In re U.S.A. Floral Products, Inc. (D.Del. 2005 WL 3657096 ..................................................... 16
McLaughlin v. Copeland, 455 F. Supp. 749 (D.C. Del. 1978) ..................................................... 14
Parker v. CBS, 320 F.2d 937 (2d Cir. 1963)............................................................................. 14

## State Cases

Barker v. Huang, 610 A.2d 1341 (Del. 1992)............................................................................. 14
Wilderman  v. Wilderman, 328 A.2d 456, 458 (Del. Ch. Ct. 1974)............................................. 15

## Federal Statutes

11 U.S.C. § 1112(b) ....................................................................................................................... 4
11 U.S.C. § 157(d) ......................................................................................................................... 1
11 U.S.C. § 362 .............................................................................................................................. 9
11 U.S.C. § 362(a) ......................................................................................................................... 1
28 U.S.C. § 157(d) ............................................................................................................... 2, 1, 16, 1

## State Statutes

18 Del. Code sec. 18-1001 ........................................................................................................... 15
6 Del. Code § 18-305 ..................................................................................................................... 3

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On December 1, 2006, Resort of Palm Beach, LLC (the "Debtor") filed a Motion for Entry of an Order Holding Jeffrey B. Cohen ("Cohen") and Insurance Designers of Maryland, Inc. ("IDMD," or with Cohen "Movants") in Contempt for Violation of the Automatic Stay and For Related Relief (the "Stay Motion", D.I. 176), pursuant to Bankruptcy Code §§ 105 and 362 Section 9020 of the Federal Rule of Bankruptcy Procedure. Movants seek to withdraw the reference of the Stay Motion under 28 U.S.C. § 157(d).

## SUMMARY OF ARGUMENT

The Stay Motion alleges that Cohen violated the automatic stay of 11 U.S.C. § 362(a) by (i) sending a letter to the Debtor's equity holders informing them of the bankruptcy filing and a derivative action commenced by Cohen concerning Resort and (ii) making unidentified "disparaging" statements to an insurance underwriter concerning the Debtor. In both instances, Cohen's alleged "stay violations" consisted purely of speech protected under the First Amendment of the U.S. Constitution (the "First Amendment"). Additionally, the Stay Motion seeks a broad injunction against Movants in violation of the First Amendment proscription against prior restraints. Because the Stay Motion necessarily involves consideration of both bankruptcy law and non-bankruptcy federal law, the reference must be withdrawn under the mandatory withdrawal provisions of 11 U.S.C. § 157(d).

## STATEMENT OF FACTS

**A.     Cohen's and IDMD's Investments in Resort and Resort's Failure to Honor Its Obligations to Them.**

In 2002, Frank Cilione approached Mr. Cohen with the idea of opening an upscale nightclub in West Palm Beach Florida.  Mr. Cohen purchased two Class A memberships in the Debtor for $50,000 cash.  More than two (2) years passed after the investment until the club opened, during which time no information was provided to investors about the status of opening or the handling of invested funds.

In 2004, Mr. Cilione told Mr. Cohen that Resort lacked sufficient funds to buy a liquor license and have operating capital to open its doors.  As that license and operating capital were critical to Resort's operations, Cohen agreed to invest $75,000 cash in Resort's parent company, FACT Holdings, LLC ("FACT") so that Resort could obtain a liquor license.  In exchange for that critical infusion of cash, FACT agreed that Cohen would be entitled to the same rights as other members of FACT.  FACT subsequently refused to honor its commitment to provide Cohen with equal rights in FACT, forcing Mr. Cohen to sue FACT and Mr. Cilione in Florida to compel compliance with their agreement.  At the same time as Cohen invested in FACT, IDMD, an insurance agency owned and managed by Mr. Cohen, lent Debtor $75,000 for operating capital.

Later in 2004, Mr. Cilione again told Mr. Cohen that Resort needed money for operations.   IDMD lent $200,000 cash under a secured promissory note.[1]   Resort subsequently defaulted under the $200,000 loan by failing to make a timely payment and bouncing a check on Respondents.  IDMD then filed suit in Florida to enforce the note (the "Florida Note Action").

---

[1] This is in addition to another $75,000 loan from Mr. Cohen that Debtor paid.

The relationship between Cohen and Cilione began to sour quickly despite Movants' financial support.    Under Resort's operating agreement (the "Operating Agreement"), Resort was required to provide all of its members with tax returns and quarterly financial reports, and also permit members to review Resort's financial records. Despite repeated demands, Resort refused to provide Mr. Cohen with any reports after about the first quarter of 2005.    Mr. Cohen also received numerous complaints from employees and former employees of Resort of how the club was being mismanaged. These complaints included inadequate security to prevent violence on the club premises, drug dealing by Resort employees and security guards, sales of alcohol to underage patrons, illegal purchases of retail alcohol, verbal abuse of employees, failure to pay employees and to make appropriate withholding payments, failure to pay vendors and intermingling of assets with a restaurant owned indirectly by Mr. Cilione.    When Mr. Cohen raised these concerns with Mr. Cilione, he was told that it was none of his business.    Mr. Cohen, in his capacity as a member of Resort, subsequently filed a derivative action in New York (the "Derivative Action") based on Mr. Cilione's alleged mismanagement of the club.    A copy of the complaint commencing the derivative action (the "Derivative Complaint") is attached as Exhibit "A".

Mr. Cohen eventually was forced to make a formal demands for documents under 6 Del. Code § 18-305 to which Resort never responded.    Faced with Resort's refusal to provide him with *any* financial or business information to which he was entitled under both the Operating Agreement and the Delaware Code, Mr. Cohen was forced to sue Resort in the Delaware Court of Chancery to compel Resort's compliance with its legal obligations. ·

B.    **Resort's Bankruptcy Filing**

On July 31, 2006 (the "Petition Date"), one day after Resort defaulted in the Chancery Court action, Resort filed its chapter 11 petition in the United States Bankruptcy Court for the District of Delaware.   Although the matrix attached to the petition lists IDMD and Mr. Cohen as notice parties, neither received formal notice of the bankruptcy filing.   Significantly, the docket in the bankruptcy case reflect that the Debtor did not provide *any* notice of its bankruptcy filing to its equity holders, as required under Fed. R. Bank. P. 2002(d), until November, 2006 when the U.S. Trustee brought this issue to the Bankruptcy Court's attention.

Cohen and IDMD subsequently moved for the appointment of a trustee under 11 U.S.C. § 1112(b) (the "Trustee Motion").   At the hearing on the Trustee Motion, the uncontested facts showed that:

1.    Mr. Cilione had personally purchased liquor for Debtor at retail stores in violation of the Florida Liquor Code;

2.    A security guard at Resort employed by Platinum Security was arrested for narcotics dealing while working at Resort;[2]

3.    Due to non-payment of certain phone bills, for some time, Debtor processed its credit card transactions through a phone line attached to a money-access machine;

4.    Debtor sometimes provided cash, liquor and the services of employees to Mr. Cilione's restaurant (and vice versa);

5.    Debtor failed to timely pay employees in the Spring of 2006;

6.    Debtor failed to maintain liability insurance from the Spring of 2006 until after the Petition Date;

7.    Debtor failed to maintain workers' compensation insurance during part of the Spring and Summer of 2006;

---

[2] Subsequently, Movants learned that several other Platinum security guards were recently arrested for narcotics dealing at Resort.

8.   Debtor failed to provide IDMD and Cohen with quarterly financial reports and other information;

9.   Debtor did not timely file its schedules, tax returns, financial statements and a lists of equity holders as required by the Bankruptcy Code and Rules;

10.  Debtor does not maintain a centralized accounting system, but rather uses a number of separate, unconnected procedures and systems controlled by Mr. Cilione;

11.  As reflected by the docket, Resort did not serve its equity holders with notice of its bankruptcy filing until November 2006 after this issue was brought to Debtor's attention by the office of the United States Trustee.

12.  Resort has never made any distribution to its equity holders.

Despite these facts, the Bankruptcy Court denied the request for the appointment of a trustee or alternate request for the appointment of an examiner.  The Bankruptcy Court appeared to find that Debtor's failures to comply with many of its duties did not amount to gross mismanagement. The Bankruptcy Court also held that little or no admissible evidence of financial impropriety was submitted. The Court also denied a motion for relief from stay to proceed with the Derivative Action.  The Court denied both the Trustee Motion and the stay relief motion "without prejudice."

**C.    The Stay Violation Motion**

On December 1, 2006, the same day as Cohen filed a motion for the production of financial records, Debtor filed the Stay Motion, attached as Exhibit "B" hereto. Movants' response thereto is attached as Exhibit "C."  The Stay Motion seeks, <u>inter alia</u>, a money judgment against Cohen and IDMD for actual damages, including attorneys' fees, purportedly sustained as a result of Cohen's and IDMD's alleged violations of the automatic stay.  The Stay Motion also seeks punitive damages and a broad, if vague

injunction against Cohen and IDMD that they "desist from any actions to interfere with the business or reorganization."

The Stay Motion is based on three alleged violations of the stay.

### 1. The Letter to Members Informing Them of the Bankruptcy Filing and the Derivative Action.

In October, 2006, Mr. Cohen sent a letter to Debtor's members informing them of the bankruptcy filing and the Derivative Action. A copy of such a letter (the "Notification Letter") is attached to the Stay Motion as Exhibit C. Respondents would stress that at the time this letter was mailed, and as reflected on the docket, Debtor had provided no formal notice of the bankruptcy to its members as required by Fed. R. Bank. P. 2002(d).

Indeed, Respondents were informed by one member that when he called Mr. Cilione in September, 2006 to inquire as to Resort's business performance, Mr. Cilione not only neglected to tell him about the bankruptcy, but assured the member that everything was fine. At least one member has told Respondents that he knew nothing of the bankruptcy filing before receiving Mr. Cohen's letter. In view of Debtor's failure to comply with its obligation to formally notify its equity holders of the bankruptcy filing, it is more than a little ironic that Debtor complains of Mr. Cohen's letter.

In addition to informing the members of the bankruptcy filing, the Notification Letter also told the members about the pending Derivative Action and summarized the allegations in that action, including that Cilione has allegedly (1) siphoned Resort funds for personal use, (2) used Resort's cash, liquor and employees to support unrelated business operations, (3) failed to properly pay employee wages and taxes, (4) failed to make distributions to Members, and (5) failed to make required reports to Members. The

letter stressed that the derivative action merely _alleged_ certain facts. The letter does not state or imply that any court has made such findings. Of course, the complaint in the Derivative Action is a matter of public record and is available for anyone to review.

The letter also notes that Cohen and IDMD filed a motion for the appointment of a trustee and for relief from stay and truthfully states that these motions were denied "for the time being" (in other words, without prejudice). Contrary to Debtor's suggestions, the letter in no way states, suggests or implies that Mr. Cohen has ever been appointed by any Court as a representative of the members. The letter merely states a basic fact about the Derivative Action: that Mr. Cohen did not bring this suit in his own capacity, but rather on behalf of the Debtor for the benefit of all members—as is the case in every derivative action.

Finally, the letter states that Resort intends to change the image of the club to one radically different from the club image that the members were sold on in order to persuade them to invest and urges members to voice any objection they have to this change. While Debtor claims that this statement somehow undermines the Debtor's plan, there is nothing in the Debtor's combined plan and disclosure statement that even addresses the issue of a change (or lack of change) in Resort's image.

### 2.    Alleged Communications with Resort's Insurance Underwriters

Debtor's second alleged basis for a stay violation is certain unidentified verbal communications that Mr. Cohen supposedly made concerning Debtor's insurance. Debtor does not allege when such communications were made, to whom they were made or the substance of such communications. Debtor also concedes that it has suffered no identifiable injury from such communications.

### 3. Motion Filed in the Florida Action.

Debtor's final basis for the Motion was IDMD's filing of a motion for a determination of the amount of legal fees due in the Florida Action (the "Fee Motion", attached as Exhibit B to the Stay Motion, Exhibit "B" hereto). IDMD promptly ceased any further activity in the Florida Action after receiving a letter from Debtor's bankruptcy counsel informing IDMD of the automatic stay. While IDMD has conceded that the filing of the Fee Motion was a technical stay violation, IDMD believes that the Debtor has suffered no injury from such technical violation.

Following the filing of the Stay Motion, Cohen, IDMD and the Debtor entered into a stipulation and order under which Cohen and IDMD agreed not to take any action or have any communications concerning Resort, except as provided therein, pending an adjudication of the Stay Motion. The Stipulation and Order is attached as Exhibit "D" hereto. The Stipulation and Order expressly preserved Cohen's and IDMD's right to move for withdrawal of the reference.

### ARGUMENT

### I.    STANDARD FOR WITHDRAWAL OF THE REFERENCE

Section 157(d) of title 28 of the United States Code governs withdrawal of the reference and provides in pertinent part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding of the court determines that resolution of the proceeding requires consideration of both title 11 another laws of the United States regulating organizations or activities affecting interstate commerce.

It has been held that the mandatory provisions of section 157(d) apply where an adjudication requires consideration of title 11 and provisions of the United States

Constitution.  See In re Camden Ordinance Manufacturing of Arkansas, Inc., 245 B.R.

794 (Bankr. E.D. Pa. 2000).

Cohen seeks mandatory withdrawal of the Stay Motion as it relates to the claims

and remedies sought against him.  IDMD seeks mandatory and permissive withdrawal of

the Stay Motion to the extent the Stay Motion seeks to impose a prior restraint against

IDMD, and also seeks discretionary withdrawal of the reference in order to avoid piece

meal litigation of the claims against IDMD and Cohen.

## II.    THE STAY MOTION REQUIRES THE CONSIDERATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION[3]

The facts presented here require the consideration of the interaction between the

First Amendment and section 362 of the Bankruptcy Code.  Preliminarily, there is no

question that Cohen's alleged stay violations constitute "speech" within the meaning of

the First Amendment – the Notification Letter and the unidentified verbal

communications concerning insurance are both plainly "speech."

In the context of bankruptcy, it has been observed that delineating the scope of

application of the automatic stay of section 362(a) must be done in view of the policies

and purposes underlying the First Amendment.  As the Court noted in In re Stonegate

Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986), while acknowledging the rights of the

courts to protect the administration of justice through contempt "This does not mean,

however, that the government may with impunity pass laws curtailing 'harassing' speech.

Statutes prohibiting verbal harassment must be written or at least construed to prohibit

only that speech devoid of First Amendment protection and subject to countervailing,

compelling interests, such as privacy."

---

[3] There is no dispute that the Stay Motion involves consideration of provisions under Title 11 of the U.S. Code, namely 11 U.S.C. § 362.

The case of <u>In re National Service</u>, 742 F.2d 859, 860 (5th Cir. 1984) is instructive. In <u>National Service</u>, the debtor had employed an advertising agency to put up advertising billboards in the debtor's vicinity. The billboards were an important part of the debtor's marketing efforts. <u>Id</u>. When the debtor filed for bankruptcy, it owed money to the advertising agency. <u>Id</u>. At that point, the advertising agency threatened to superimpose on debtor's advertisement billboards the words "Beware, this Company Does not Pay Its Bills" and "Beware, this Company is in Bankruptcy." <u>Id</u>. The debtor sought a restraining order to prevent what it deemed threatened "harassment" in violation of the automatic stay. <u>Id</u>. After the bankruptcy court granted the restraining order, which was affirmed by the District Court, the Court of Appeals reversed on the grounds that the order violated the First Amendment as a "prior restraint." <u>Id</u>. <u>See also generally</u> <u>In re Gulf Coast Orthopedic Center</u>, 20 B.R. 258, 261-62 (Bankr. M.D. Fla 1997) (holding that even where debtor had stated a claim for a stay violation where it alleged that creditor's refusal to accept advertising from debtor represented an effort to collect a pre-petition debt, creditor was entitled to judgment as a matter of law on First Amendment grounds as creditor could not be compelled to speak against its will).

Debtor has attempted to distinguish <u>National Service</u> on the grounds that the Notification Letter was "inflammatory" and that it contained "contested facts that 'Contemnors' were unable to substantiate at an evidentiary hearing." No doubt, however, the debtor's own advertiser in <u>National Service</u> threat to post "Warning" signs to the general public could be viewed as quite inflammatory and extremely damaging to the debtor's business. Moreover, the Notification Letter also truthfully stated that the Debtor was in bankruptcy; that Cohen filed a derivative action in New York making certain allegations some of which are not even contested; that Cohen had filed a motion for a

trustee and for relief from stay, both of which were denied "for the time being" – laymen's words for "without prejudice"; and that Debtor is seeking to change its theme.

The Notification Letter also correctly summarized the allegations of the Derivative Action – some of which are certainly contested but have not been finally tested in any court due to Debtor's refusal to provide Cohen with meaningful access to financial records. Indeed, the facts that Debtor sometimes used resources for a related business, that it did not send certain reports to members, that it did not make distributions to members, and that it did not pay employees at certain times were all admitted, even if qualified, at the hearing on the Trustee Motion. As for the siphoning of funds, while this is contested, it has never been fully tested due to Debtor's refusal to provide Movants' with meaningful access to information. Moreover, this allegation concerns *Mr. Cilione's* conduct, not the Debtor's.

Finally, the letter correctly states that Mr. Cilione is considering changing the theme of the club to urban hip-hop and urges members to voice any objections they may have. While the Debtor argues that this somehow "interferes" with its Plan, in fact the Plan says nothing about changing the theme or image of the club, one way or another.

Just as in National Service, the Debtor here may have viewed the third party's actions as harassment. But as the Notification Letter repeats true facts most of which are matters of public record, the mere fact that the Debtor does not like the letter does not take it outside of the protection of the First Amendment.

Another illustrative case is In re Stonegate, 56 B.R. at 1016, where the court also found that a creditor's speech was protected by the First Amendment and not enjoined by the automatic stay where the creditor had parked a truck outside of the debtor's establishment with the words "Crime doesn't pay, Stonegate Auto Alarms the Same

Way". The Court held that speech that is merely "harassing" cannot be enjoined in conformity with the First Amendment even if it is "annoying" and even if it has "actual adverse effect on someone's business." Id. at 1019. Debtor had attempted to characterize the creditor's behavior in that case as merely "parking a truck" – but of course the truck was irrelevant to the Court's decision. It was the words on the truck that "Crime doesn't pay, Stonegate Auto Alarms the Same Way" that were the subject of the dispute. Certainly, this speech was more than just "annoying" as it suggested that the debtor was engaged in crime. See also Gordon v. Dennis Burlin Sales, Inc., 174 B.R. 257, 259-260 (Bankr. N.D. Ohio 1994) ("Mere words, although conceivably disparaging, distasteful or denigrating, without a clearly manifested attempt to recover on a prepetition claim (sec. 362(a)(1)) to enforce a prepetition judgment (sec. 362(a)(2)), or to accomplish any other act expressly proscribed by the several subsections under section 362(a) is insufficient to satisfy the elements of sec. 362(h). See, In re Outlaw, 66 B.R. 413, 416 (Bankr. E.D.N.C. 1986). (Creditor's conduct of parking his car outside debtor's home all night did not violate the stay.)"). The Gordon and Stonegate decisions are in harmony with the Third Circuit's pronouncement that the "respite [from the automatic stay] is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 86 (3d Cir. 1988) (reversing imposition of damages on credit union for stating that it would terminate services if its debt were not reaffirmed).

Cases that have found that harassing speech was not protected by the First Amendment have done so based on a finding that the "speech" in question was specifically intended to pressure the debtor into paying a prepetition debt. E.g., In re Baumblit, 15 Fed. Appx. 30, 36-37 (2d Cir.2001) (NOT FOR PUBLICATION) (referral

of debtor to criminal prosecution as part of effort to collect a prepetition debt was not protected by First Amendment); In re Crudup, 287 B.R. 358, 363 (Bankr. E.D.N.C. 2002) (holding that harassing letter that specifically enumerated amount of prepetition debt represented an effort to collect that debt in violation of section 362(a)(6) and was not protected by the First Amendment); In re Sechuan City, 96 B.R. 37, 43 (E.D. Pa. 1989) (distinguishing Stonegate on facts that evidence showed that the creditor acted with the intent to harm the debtor in order to collect a pre-petition debt); see also In re Andrus, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995) (finding that signs erected by creditor that stated "GENE ANDRUS, WHERE'S MY MONEY?" constituted an effort to collect a discharged debt and were not protected free speech).

Like the defendant's speech in National Service and Stonegate, Cohen's Notification Letter transmitted certain true information to other members of Resort so that they could protect their own interests. As in National Service, the statements in the Notification Letter are true, even if some of the allegations in the Derivative Action are contested. It is not without irony that Debtor complains that Mr. Cohen's letter was apparently the first notification of the bankruptcy sent to all equity holders in light of Debtor's failure to comply with its obligation to notify equity holders of the bankruptcy under Rule 2002(d).

Moreover, the Notification Letter must be viewed against the general background that the automatic stay is not intended to enjoin corporate governance even where such acts may be viewed as efforts to control estate property. In delineating what may constitute an act by an equity holder to exercise control over the Debtor's estate, the this Court has been clear that actions by equity holders to exercise their corporate governance rights do not constitute violations of the automatic stay. See In re Marvel Entertainment

Group, 209 B.R. 832. 838 (D. Del. 1997) (in overturning the Bankruptcy Court's decision holding that the automatic stay prohibited the exercise of shareholder voting rights, the Court stated moreover, "shareholders should have the right to be adequately represented in the conduct of a debtor's affairs, particularly in such an important matter as the reorganization of the debtor.') (Citations omitted).    Indeed, it has been specifically recognized that an injunction prohibiting any communications to shareholders is repugnant to the First Amendment.  See Parker v. CBS, 320 F.2d 937 (2d Cir. 1963).

Moreover, the scope of the automatic stay and the protections afforded by the First Amendment should further be viewed in light of the long-standing common law protecting statements made in reference to "judicial proceedings."  See generally Barker v. Huang, 610 A.2d 1341 (Del. 1992) (recognizing existence of "judicial proceedings" privilege in Delaware).  This privilege is absolute and protects all speech regardless of whether it is true or not.  Id.  The privilege has been extended to communications in the context of bankruptcy proceedings.  See McLaughlin v. Copeland, 455 F. Supp. 749 (D.C. Del. 1978).  The Notification Letter is on its face directly related to the bankruptcy case and would fall under the general category of a privileged communication.

Debtor has argued that the Notification Letter is "misleading" because it purportedly suggests that Mr. Cohen was appointed as a representative of the Debtor's members.  The Debtor's argument finds no support in the letter itself.  Nowhere does the letter state, imply or suggest that Mr. Cohen has been appointed by anyone to do anything.  Rather, the letter merely states that the derivative action was brought on behalf of other members—a statement that is true as a matter of law.  A derivative action is not brought on behalf of the named plaintiff, but on behalf of the company for the benefit of all other equity holders.  See generally Wilderman v. Wilderman, 328 A.2d 456, 458

(Del. Ch. Ct. 1974) (holding that recovery in a derivative action should inure to the benefit of *all* stockholders). A derivative action by its very nature is not brought on behalf of an individual equity holder. Moreover, for an equity holder to commence a derivative action, it is not necessary that a court "appoint" such holder as a representative of the company. Rather, the right to bring a derivative action is an inherent right of an equity holder under Delaware law. See, e.g., 18 Del. Code sec. 18-1001 et seq. (statute governing derivative actions brought by members of a limited liability company).

In sum, because the Notification Letter contained true statements made to other members so that these members could protect their own interests in the Debtor, the Notification Letter is protected speech under the First Amendment. Of course, the Court need not agree with Movants at this stage in the proceeding. Rather, the only issue before the Court now is whether the Stay Motion presents genuine issues under the First Amendment and Title 11. It plainly does.

## III.    THE MOTION IS TIMELY

The Stay Motion was originally set for a hearing on December 20, 2006. The parties then entered into the Stipulation and Order that expressly contemplates the filing of a motion to withdraw the reference. The Stipulation and Order contains a broad injunction against Cohen and IDMD prohibiting them from making communications or taking actions adverse to Resort except as provided therein. Significantly, the injunction remains in place until there is a determination, by this Court or the Bankruptcy Court, of the Stay Motion. As the injunction provided in the Stay Motion is quite broad, the Debtor will not be prejudiced in at all by whatever delay, if any, may be necessary in order to withdraw the reference.

In determining whether a withdrawal motion is timely, the Court may look to the stage of the proceeding. The statute permits withdrawal of the reference "on timely motion of a party." 28 U.S.C. § 157(d). However, "'timeliness of the motion for withdrawal of the reference is not defined in the statute and can be judged only in a relative sense.' 89 B.R. 196, 197 (M.D.Fla. 1988). *Lowin v. Dayton Securities Associates (In re the Securities Group 1980)*, Therefore, timeliness 'must be measured by the stage of the proceedings in the Bankruptcy Court.' *Id.*" In re U.S.A. Floral Products, Inc. (D.Del. 2005 WL 3657096) (attached hereto as Exhibit E.) Here, the Stay Motion has not been rescheduled for a hearing before the Bankruptcy Court. Moreover, the parties have not initiated any discovery or other pre-trial proceedings concerning the Stay Motion. Indeed, at this time, the Debtor appears to be focused on its upcoming confirmation hearing. As there has been no pre-trial activity on the Stay Motion, the Stay Motion has not yet been rescheduled for a hearing, and in any case, the injunction of the Stipulation and Order will remain in place pending an adjudication of the Stay Motion, this Motion to Withdraw is timely.

## IV.    WITHDRAWAL AS TO CLAIMS AGAINST IDMD

Although IDMD's alleged stay violation is not protected speech, the Stay Motion does seek a broad and highly vague injunction against IDMD that would appear to curtail IDMD's speech rights. Moreover, IDMD submits that the claim in the Stay Motion against IDMD should be withdrawn 'for cause' under 28 U.S.C. § 157(d) along with the claims against Cohen in the interests of judicial economy.

## CONCLUSION AND RELIEF REQUESTED

For all of these reasons, Movants respectfully request that the Court enter an order

withdrawing the reference of the Stay Motion.

DATED:  January 11, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:         loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance*
*Designers of Maryland, Inc.*

# EXHIBIT A

Nathan M. Barotz, Esq.
Attorney at Law
52 Vanderbilt Avenue
14th Floor
New York, NY 10017-3899
Telephone: (212) 905-6536
Facsimile: (212) 905-6537
E-Mail: nathanbarotz@onebox.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

JEFFREY B. COHEN, individually and          Civil Action No.
derivatively on behalf of Resort of
Palm Beach LLC, a Delaware limited
liability company,                          VERIFIED COMPLAINT

                    Plaintiff,

     - against -

FACT HOLDINGS RESORT, LLC;
and FRANK CILIONE,

                    Defendants, and         PLAINTIFF DEMANDS
                                            TRIAL BY JURY
RESORT OF PALM BEACH,LLC,

                    Nominal Defendant.

------------------------------------x


     Plaintiff, JEFFREY B. COHEN, by his attorney Nathan M.

Barotz, as and for his complaint against the defendants Fact

Holdings Resort, LLC; Frank Cilione; and Resort of Palm Beach,

LLC; alleges as follows:

### The Parties

1.    The plaintiff, Jeffrey B. Cohen, is an individual and is a citizen of the State of Maryland, and resides in the City of Baltimore, State of Maryland.

2.    On information and belief, nominal defendant Resort of Palm Beach, LLC ("Resort LLC") is a Delaware limited liability company; owns and operates a nightclub named "Resort" in West Palm Beach, Florida; and maintains or has maintained its principal office in the City, County, and State of New York.

3.    Upon information and belief, defendant Fact Holdings Resort, LLC ("Fact LLC") is a Delaware limited liability company; is the successor to Fact Holdings PB, LLC; is the Managing Member of Resort LLC; and maintains or has maintained its principal office in the City, County, and State of New York.

4.    Upon information and belief, defendant Frank Cilione ("Cilione") is a citizen of the State of New York; is the Managing Member of Fact LLC; is a member or manager (individually or through an entity controlled by Cilione) of Tsunami of Palm Beach, LLC, a Delaware limited liability company that owns and operates a restaurant in West Palm Beach, Florida, named "Tsunami" ("Tsunami Restaurant"); and resides in the City, County, and State of New York.

2

## Jursdiction And Venue

5.    The amount in controversy exceeds the sum or value of
$75,000.00, exclusive of interest and costs, and is between a
citizen of a state and citizens of different states, and this
Court has jurisdiction pursuant to 28 U.S.C. §1332.    A
substantial part of the events and omissions giving rise to
plaintiff's claim occurred in the Southern District of New York
and, on information and belief, defendants are subject to
personal jurisdiction in the Southern District of New York, and
venue in the Southern District of New York is therefore
appropriate pursuant to 28 U.S.C. §1391.

## The Underlying Facts

6.    Upon information and belief, plaintiff, Resort LLC,
Fact LLC, and Cilione entered into a written Operating Agreement
dated as of March 15, 2001 that provides for the operation and
management of Resort LLC (the "Operating Agreement").

7.    The Operating Agreement provides, in Article II, that
the Manager of Resort LLC shall be Fact Holdings PB, LLC, the
predecessor of defendant Fact LLC. Upon information and belief,
defendant Fact LLC or its predecessor has been the Manager of
Resort LLC since its inception.

8.    Upon information and belief, Cilione is the majority
owner of Fact LLC and exercises complete control over Fact LLC,

3

and did in fact actively participate in the wrongful conduct described more fully herein and siphoned funds belonging to Resort LLC for his personal use, caused Fact LLC to breach its fiduciary duties to Resort LLC and plaintiff, and caused Fact LLC to breach the Operating Agreement.  Fact LLC is the mere alter ego of Cilione, and the business form of Fact LLC should be disregarded.

9.    Upon information and belief, Fact LLC and Cilione own interests in other businesses, including, without limitation, other restaurants and nightclubs in Florida and New York in which plaintiff and Resort LLC have no interest, including Tsunami Restaurant.

10.    Upon information and belief, beginning in or about 2003, Fact LLC and Cilione have improperly taken money and goods, including cash and liquor, in an amount in excess of $1,000,000, rightfully belonging to Resort LLC and have used such money and goods solely for their own benefit or the benefit of Tsunami Restaurant or other nightclubs or businesses in which they have an interest.

11.    Upon information and belief, Fact LLC and Cilione have used the employees paid by Resort LLC to perform services for other entities owned and operated by Fact LLC and Cilione, including a nightclub in East Hampton, New York.

4

12.   Upon information and belief, Fact LLC and Cilione have failed to manage Resort LLC properly, and have, among other things, permitted illegal drug sales and underage drinking to take place on the premises of "Resort," as a result of which "Resort" is the subject of scrutiny by law enforcement and municipal agencies.

13.   Upon information and belief, Fact LLC and Cilione have failed to comply with federal and Florida state laws and regulations applicable to the payment of wages and withholding of taxes from employees.

14.   Upon information and belief, Fact LLC and Cilione have violated their obligations under the Operating Agreement to Resort LLC and the members, including plaintiff, in the following manners, among others:

> a.   they have failed to make distributions to members in accordance with Article IV of the Operating Agreement;
>
> b.   they have failed to cause the preparation and timely filing of all tax returns of Resort LLC in accordance with section 4.10 of the Operating Agreement;
>
> c.   they have failed to carry on the business of Resort LLC in the ordinary course;

d.   they have failed to exercise their power and authority over the assets of Resort LLC for the benefit of Resort LLC;

e.   they have failed to obtain the approval of a majority in interest of the members to authorize the acts set forth herein that constitute breaches of the Operating Agreement;

f.   they have failed to obtain the authorization of the members of Resort LLC with respect to the transactions engaged in by Fact LLC and Cilione in which Fact LLC and Cilione had a substantial financial interest;

g.   they have taken compensation in amounts not approved by the members;

h.   they have failed to provide annual and quarterly reports of operations of Resort LLC in accordance with section 5.17 of the Operating Agreement;

i.   they have used the Resort LLC funds to pay legal fees that they incurred in lawsuits that did not arise in connection with conduct of the business of Resort LLC in accordance with section 10.1(a) of the Operating Agreement;

j.   they created or issued additional classes of interests in Resort LLC that altered the manner of

6

allocation for tax purposes of items of net

losses, tax items, or distributions; and altered

the manner of computing distributions to members,

in accordance with section 11.3 of the Operating

Agreement; and

k.   they have failed to maintain separate books of

account for Resort LLC, and have refused to

permit plaintiff to inspect and copy the books

of account of Resort LLC.

### Specific Allegations Regarding Derivative Action

15.   Plaintiff brings this derivative action pursuant to
Delaware Law Article 6 Del. C. § 18-1001 and Rule 23.1 of the
Federal Rules of Civil Procedure.

16.   The plaintiff is currently a member of Resort LLC and
was a member of Resort LLC at the time of the transactions of
which the plaintiff complains.

17.   This action is not a collusive one to confer
jurisdiction on a court of the United States which it would not
otherwise have.

18.   Plaintiff has not made an effort to secure the
initiation of the action by Resort LLC because defendant Fact
LLC is the manager of Resort LLC and, upon information and
belief, defendant Cilione is the majority owner of the voting
interests and exclusive manager of Fact LLC.

7

19. It would be futile for plaintiff to be required to request that Fact LLC, as manager of Resort LLC, bring an action against itself and Cilione, who controls Fact LLC.

20. Resort LLC, under control of Fact LLC and Cilione, has failed to enforce rights which may properly be asserted by it.

## FIRST CAUSE OF ACTION

### (Conversion)

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

22. Defendants Fact LLC and Cilione have appropriated property belonging to Resort LLC, including, without limitation, cash money, employee services, and liquor, for their own use and benefit to the exclusion of Resort LLC and its members.

23. By reason of the foregoing, Resort LLC has suffered damages in an amount in excess of $1,000,000.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

24. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

25. As Manager of Resort LLC, Fact LLC owes fiduciary duties to Resort LLC and the members of Resort LLC, including plaintiff.

26.  Fact LLC, under the operation and management of Cilione, has breached its fiduciary duties by converting property belonging to Resort LLC and using it for the benefit of Fact LLC and Cilione, personally; used the employees paid by Resort LLC to perform services for other entities owned and operated by Fact LLC and Cilione, including a nightclub in East Hampton, New York; failed to manage Resort LLC properly by permitting illegal drug sales and underage drinking to take place on the premises of "Resort"; and placed Resort LLC in legal jeopardy by failing to comply with federal and Florida state laws and regulations applicable to the payment of wages and withholding of taxes from employees.

27.  By reason of the foregoing, plaintiff and Resort LLC have suffered damages in an amount in excess of $1,000,000.

### THIRD CAUSE OF ACTION

#### (Breach of Contract)

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

29.  Fact LLC and Cilione have breached the Operating Agreement in the manner set forth herein.

30.  By reason of the foregoing, plaintiff and Resort LLC have suffered damages in an amount in excess of $1,000,000.

9

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Contractual Covenant of Good Faith and Fair Dealing)

31.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

32.  The Operating Agreement contains an implied covenant to refrain from any act that would injure plaintiff or Resort LLC.

33.  Fact LLC breached the implied covenant of good faith and fair dealing that it owed to plaintiff and Resort LLC.

34.  By reason of the foregoing, plaintiff and Resort LLC have suffered damages in an amount in excess of $1,000,000.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

36.  By reason of the foregoing Fact LLC and Cilione have derived a valuable benefit and have been unjustly enriched all to the damage of plaintiff and Resort LLC in the sum to be determined at trial but no less than $1,000,000.

10

## SIXTH CAUSE OF ACTION

### (Accounting)

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

38. Plaintiff has no adequate remedy at law.

39. Plaintiff demands that the Fact LLC and Cilione, as the Managing Member of Fact LLC, fully account for Resort LLC's income and expenses by making available to the plaintiff the bank statements, canceled checks, and tax returns, purchase orders, work orders, accounts payable, and expense reports relating to Resort, and by repaying to Resort LLC and plaintiff the amounts wrongfully taken from them.

## SEVENTH CAUSE OF ACTION

### (Constructive Trust)

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-20, above, as if fully restated herein.

41. Plaintiff has no adequate remedy at law.

42. As a result of the fraudulent, unfair, and unconscionable conduct of Fact LLC and Cilione, a constructive trust should be imposed on the property of entities owned or controlled by Fact LLC or Cilione, including Tsunami Restaurant and Resort of East Hampton, New York, and any other person or

11

entity for the benefit of which Fact LLC and Cilione siphoned property belonging to Resort LLC.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jeffrey B. Cohen prays for judgment against defendant Fact LLC and Cilione, and each of them, as follows:

A.   An order that plaintiff may proceed to enforce the rights of Resort LLC against Fact LLC and Cilione;

B.   An award of damages in an amount in excess of $1,000,000, together with interest thereon;

C.   An order that Fact LLC and Cilione account for Resort LLC's income and expenses by making available to the plaintiff the bank statements, canceled checks, and tax returns, purchase orders, work orders, accounts payable, and expense reports relating to Resort LLC, and by repaying to Resort LLC and plaintiff the amounts wrongfully taken from them;

D.   An order imposing a constructive trust on the property of entities owned or controlled by Fact LLC or Cilione, including Tsunami Restaurant and Resort of East Hampton, New York, and any other person or entity for the benefit of which Fact LLC and Cilione siphoned property belonging to Resort LLC;

E.   For the costs and disbursements of this action, including attorneys' fees pursuant to 6 Del. C. § 18-1004; and

12

F.  For such other and further relief which to the Court seems just and proper.

DATED this 8th day of February, 2006.

By: _____

Nathan M. Barotz (NB 8693)
Attorney for the plaintiff

13

Verification

State of Maryland
County of Baltimore

JEFFREY B. COHEN, being duly sworn, deposes and says:

I am the plaintiff in the within action.  I have read the foregoing complaint and know the contents thereof.  The complaint is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true.

The grounds of my belief as to those matters not alleged on my own knowledge are conversations with Frank Cilione and conversations with certain former employees of Resort LLC.

JEFFREY B. COHEN

Sworn to before me this
13th day of February, 2006

Notary Public

14

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RESORT OF PALM BEACH, LLC, | Case No. 06-10798 (KG) |
| Debtor. | **Obj. Dead.: Dec. 13, 2006 @ 4:00 p.m. (ET)**<br>**Hrg. Date: Dec. 20, 2006 @ 2:00 p.m. (ET)** |

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF**

PLEASE TAKE NOTICE that on December 1, 2006, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, filed the Debtor's Motion For Entry Of An Order Holding Jeffrey Cohen And Insurance Designers Of Maryland, Inc. In Contempt For Violation Of The Automatic Stay And For Related Relief (the "Motion").

Objections and other responses (collectively, "Objections") to the Motion must be: (i) filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before **December 13, 2006 at 4:00 p.m. (ET) (the "Objection Deadline")**; and (ii) served so as to be actually received by the undersigned counsel to the Debtor on or before the Objection Deadline.

A HEARING ON THE MOTION WILL BE HELD BEFORE THE HONORABLE KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE, AT THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, J. CALEB BOGGS FEDERAL BUILDING, 844 KING STREET, 2ND FLOOR, WILMINGTON, DE 19801 ON **DECEMBER 20, 2006 AT 2:00 P.M. (ET).**

176

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR OPPORTUNITY FOR A HEARING.

Dated:  December 1, 2006
Wilmington, DE

PEPPER HAMILTON LLP
David B. Stratton (No. 960)
James C. Carignan (No. 4230)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

and

Douglas E. Spelfogel, Esq.
Richard J. Bernard, Esq.
BAKER & HOSTETLER LLP
666 Fifth Ave.
New York, NY  10103
(212) 589-4200

*Counsel for debtor and debtor-in-possession*

-2-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RESORT OF PALM BEACH, LLC, | : | Case No. 06-10798- (KG) |
| | : | |
| Debtor. | : | **Obj. Dead.:  Dec. 13, 2006 @ 4:00 p.m. (ET)** |
| | : | **Hrg. Date:  Dec. 20, 2006 @ 2:00 p.m. (ET)** |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND FOR <u>RELATED RELIEF</u>

Resort of Palm Beach, LLC ("the Debtor"), the above-captioned debtor and

debtor in possession, by and through its undersigned counsel, for its motion pursuant to

Section 105 and 362 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure

9020, seeks entry of an order holding Jeffrey B. Cohen and Insurance Designer's of

Maryland, Inc. (Insurance Designer's of Maryland and together with Mr. Cohen,

"Cohen") in contempt for violation of the automatic stay, directing Cohen to cease and

desist from all actions interfering with the Debtor's operations and reorganization, and

fixing a hearing to consider the imposition of monetary sanctions against Cohen.  In

support of its motion, the Debtor respectfully alleges and states as follows:

## <u>INTRODUCTION</u>

1.      Cohen is a disgruntled former investor in the Debtor and its managing

member. Cohen has and continues to take actions against the Debtor in violation of the

automatic stay for the apparent purpose of advancing his personal interests to acquire the

Debtor in bad faith without due consideration, to increase the costs to the Debtor so as to

cause its demise, and for vindictive purposes after the Debtor refused to pay Cohen a

significant premium (to which they are not legally entitled).  Such course of conduct

1

included filing and refusing to withdraw a motion for payment of attorneys fees (which was ultimately stayed thereafter), providing derogatory information to the debtor's insurance underwriters after the Debtor obtained directed coverage, and sending a mass mailing to all of the Debtor's shareholders while a plan was in prospect - - which not only was not an authorized statement, but contained false and misleading allegations which were identical to the claims rejected by this Court only one week prior to the mailing at an evidentiary hearing to appoint trustee. It is indisputable that the foregoing actions were undertaken with knowledge of the automatic stay and were overt, intentional acts proscribed under Section 362, for the purpose of harassment and coercion, warranting entry of an order finding Cohen in willful violation of the automatic stay/contempt and directing that Cohen cease and desist from a continuation of such course of conduct.

## BACKGROUND

2.      On July 31, 2006 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its assets as debtor in possession.

3.      The Debtor operates a state-of-the-art upscale nightclub and lounge sprawling across approximately 7,500 square feet in themed rooms on the upper level of the CityPlace retail marketplace in West Palm Beach Florida. The nightclub opened in April 2004 and has been rated one of the premier club venues in Palm Beach County.

4.      The Debtor's most valuable asset excluding litigation claims, is its good will (including its valuable leasehold interest that can be extended up to 25 years) and elaborate build out - - the club cost in excess of $1 million to construct, replete with boutique hotel style lounge and futuristic architecture.

2

5.    The nightclub has drawn a significant following, resulting in gross profits during its first full year of operations in 2005 of approximately $2 million with a small loss, despite approximately six weeks of closures resulting from, among other things, last year's devastating hurricanes. The Debtor has sustained losses in 2006, however, as part of its restructuring plan, the Debtor is currently undergoing a complete revamping of its operations, including the execution of promotional agreements with the Connected Group, Baha Entertainment, and Bablu Badboys, the latter, including a live broadcast from the club on WCBS 102.3 XFM Radio. The Debtor has also added an additional night to operations, redirecting marketing efforts to the changing demographic of the Cityplace complex and has taken steps to raise additional cash to cover working capital while the Debtor looks to confirm its plan of reorganization.

6.    The Debtor estimates that it has approximately $1.2 million of unsecured debt, including insiders (some of which is contingent/disputed), and assets having a book value in excess of $1.2 million.

7.    In addition, the members of the Debtor contributed approximately $1 million for their equity interests in the Debtor.

8.    The Debtor leases the premises at 700 S. Rosemary Ave., West Palm Beach, Florida where the Debtor's nightclub is located, pursuant to that certain lease (the "Lease"), dated in or about May 2001 and amended from time to time, between the Debtor as tenant and CityPlace Retail, L.L.C. (the "Landlord") as landlord.

9.    As provided in the Debtor's first day affidavit, the Debtor commenced the within chapter 11 case to restructure its business and financial affairs because of three separate circumstances: (i) the adverse impact by numerous hurricanes that landed in

3

South Florida in 2004 and 2005; (ii) a barrage of unsubstantiated and frivolous lawsuits by a disgruntled former investor, Jeffrey Cohen ("Cohen") and his company, Insurance Designers of Maryland; and (iii) a dispute with the Landlord, not directly relevant to the instant motion.

10.    The disputes with Cohen included claims by the Debtor that prior to the Filig Date, Cohen has interfered with the management and operations of the business, taken steps to take control over the business and assets, and hired the Debtor's key personnel in connection with starting a competing business within the proximity to the nightclub in contravention of a non-competition agreement. The Debtor also asserted that Cohen sold the Debtor insurance through an unlicensed insurance company he controlled in violation of state law. Cohen had previously been fined by the State of Maryland Department of Insurance for writing insurance without a license.

11.    Mr. Cohen also peppered the Debtor's principal with various threatening emails in addition to his other tactics in disrupting the business, leading up to the lawsuits filed by Movants.[1]

12.    The Cohen lawsuits include:

---

1.    For example, in one email sent to the Debtors principal last November 1, Cohen ranted:

"You piece of [expletive deleted] you [expletive deleted] with the wrong dog yet again, real men don't renegotiate [sic] after acceptance. You would know this if you had any [expletive deleted] or morals. See you in Court than [sic] I will see you in jail [expletive deleted]. Sucks for you no more wife for congial [sic] visits. Hope you make friends with Bubba."

See Debtor's Opposition to Motion for Trustee.

(a)    Compliant in Florida State Court to foreclose on the club under a so-called security agreement after Cohen's company, Insurance Designers of Maryland received payment one day late on account of a certain loan provided to the Debtor (which was subsequently paid in full except for an unadjudicated dispute regarding attorney's fees) – the Court rejected Cohen's attempt to foreclose on the collateral, leaving open only a question on payment of attorney's fees (which is disputed);

(b)    Complaint framed as a "derivative action" filed in Federal District Court in New York, asserting a series of specious claims for so-called breach of fiduciary duty and fraud in connection with the operation of the business – the Debtor moved to dismiss the suit, which has been scheduled for oral argument in October; and

(c)    Complaint field in Delaware Chancery Court seeking certain information, including data on investors (and for which the Debtor believes Cohen will use to further disrupt operations of the business).

13.    The Debtor's primary non-litigation assets are its good will, lease, food and beverage inventories, and liquor license.  The Debtor also believes it has significant claims against Jeffrey Cohen and Insurance Designers arising under Chapter 5 of the Bankruptcy Code and state law, including but not limited to claims for equitable subordination and fraud.

### Relevant Chapter 11 Events with Cohen

14.    Shortly after the Filing Date, Cohen filed motions to modify the automatic stay to continue state court litigation against the Debtors, sought to deputize himself as a "representative" of the estate, and sought appointment of a Chapter 11 trustee under Section 1104 of the Bankruptcy Code.

15.    Thereafter, the Debtor filed opposition to the above-referenced motions and also filed its combined plan of reorganization and disclosure statement on or about October 9, 2006.  The Hearing on the adequacy of the disclosure was originally scheduled for November 10, 2006, and has been continued to December 20, 2006.

5

16.    On October 10, 2006, evidentiary hearings were held on motions by Cohen for modification of the automatic stay to permit Cohen to proceed with lawsuits in New York and Florida and for appointment of a Chapter 11 trustee pursuant to Section 1104.

17.    The Debtor opposed the Motions, asserting that the allegations raised by Cohen were baseless. In addition, the Debtor raised issue with Cohen's motivations, in particular, Cohen's efforts to undermine the business and reorganization for purposes of taken control over the businesses at a fire sale price (Cohen and the Debtor's had entered into a confidentiality agreement and negotiations for the sale of the business shortly after the Filing Date) and to coerce the Debtor into paying significant premium to Cohen, to which Cohen was not entitled.

18.    After an evidentiary hearing on the Motions, the Court found that Cohen had failed to sustain his burden for lifting the automatic stay or for appointment of a Chapter 11 trustee, and consequently, denied the motions.

19.    By this motion, the Debtor seeks entry of an order holding Jeffrey B. Cohen and Insurance Designer's of Maryland, Inc. (Insurance Designer's of Maryland and together with Mr. Cohen, "Cohen") in contempt for violation of the automatic stay, for amongst other things: (i) filing and refusing to withdraw a motion for payment of attorneys fees in the Florida State Court Action (which action was ultimately stayed); (ii) providing derogatory information to the debtor's insurance underwriters after the Debtor obtained directed coverage; and (iii) sending a mass mailing to all of the Debtor's shareholders while a plan was in prospect, which was not only unauthorized, but contained false and misleading allegations nearly identical to the claims rejected by this

6

Court only one week prior to the mailing at an evidentiary hearing to appoint trustee. In

addition, the Debtor seeks protection against Cohen's continuation of actions interfering

with the Debtor's business and reorganization, as well as fixing a hearing to consider the

imposition of monetary sanctions against Cohen, including but not limited punitive

damages and fees.

ARGUMENT

20.    Bankruptcy Code Section 362(a) provides in relevant part as follows:

(a) Except as provided in Subsection (b) of this section, a petition filed under Sections
301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of - -

(1) The commencement or continuation, including the issuance or employment of
process, of a judicial, administrative, or other action or proceeding against the debtor
that was or could have been commenced before the commencement of the e case
under this title or to recover a claim against the debtor that that arose before the
commencement of the case under this title;

(3) Any act to obtain possession of property of the estate or of property from the estate or
to exercise control over property of the estate;

(6) Any act to collect, assess, or recover a claim against the debtor that arose before the
commencement of the case under this title.

21.  The automatic stay is effective immediately upon the filing of the petition, and

insures that a debtor's assets will be protected from actions of third parties and

therefore preserves such assets for an equitable distribution to the debtor's creditors.

See generally, 2 Collier on Bankruptcy, Section 362.04 (15th De. 1990).

22.  The legislative history of Section 362(a)(1) makes clear that the automatic stay is

one of the fundamental debtor protections provided by the bankruptcy laws, barring

all harassment and all collection efforts and relieving the debtor of the financial

pressures that drove him into bankruptcy. See, H.R.REP. NO. 595, 95th Cong., 1st

7

Sess. 174-175 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. <u>In re Smith</u>,

185 B.R. 871 (Bankr. M.D. Fl. 1994)

23.    One bankruptcy court analyzing the legislative history of Section 362 provided

as follows:

> <u>Section 362(a)(1)</u> interacts with <u>Section 362(a)(6)</u> to prevent harassment of the
> debtor with respect to prepetition claims.  124 CONG.REC. H11092 (daily ed.
> Sept. 28, 1978); S17409 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and
> Sen. DeConcini). <u>The language*873 of Section 362(a)(6) is "very broad,"
> <em>MorganGuaranty Trust Co. v. American Sav. & Loan Assoc.,</em> 804 F.2d 1487,
> 1491 (9thCir.1986),</u> <em>cert. denied,</em> <u>482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701
> (1987),</u> and is designed to prevent creditor coercion and harassment of the debtor.
> <u>Id.</u><em>See also</em> 2 COLLIER ON BANKRUPTCY, ¶ 362.05[6] at 362-44 (15th ed.
> 1988)  (footnote omitted):
> Paragraph 6 is intended to prevent creditor harassment of the debtor in
> attempting to collect pre-petition debts.

<u>In re Smith</u>, 185 B.R. 871, 872-3 (Bankr. M.D. Fl. 1994).


24. The <u>Smith</u> Court went on to provide, " **<u>The conduct prohibited ranges from that of</u>**

**<u>an informal nature, such as by telephone contact or by dunning letters to more</u>**

**<u>formal judicial and administrative proceedings</u>** that are also stayed under

paragraph (1). <u>Id.</u>

25. <u>Section 362(k) of the Bankruptcy Code</u> in turn provides that "[a]n individual injured

by any <em>willful</em> violation of a stay provided by this section shall recover actual

damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages." <u>11 U.S.C. § 362(h) (1988)</u> (emphasis added). [2]

---

[2] Section 362(k) is the renumbered Code Section formerly 362(h) prior to
October 2005 amendments.

26. Although <u>Section 362(k)</u> refers to an individual, the section has uniformly been held
   to be applicable to a corporate debtor in this Circuit. <u>Atlantic Business and</u>
   <u>Community Corporation</u>, 901 F.2d 325, (3rd Cir. 1990)(referring to former Section
   362(h), renumbered 362(k) under 2005 Amendments); <u>*Budget Service Co. v. Better*</u>
   <u>*Homes of Va.,* 804 F.2d 289, 292 (4th Cir.1986)</u>.

27. In this case, upon the Filing, the Debtor sent Cohen notification of the
   commencement of the voluntary bankruptcy case. At the hearing on Cohen's Motion
   for appointment of a trustee, their general counsel acknowledged that Cohen was on
   notice of the Bankruptcy Filing. Notwithstanding, Cohen filed a Motion to fix
   damages in the Florida Action on or about August 8, 2006, and despite notice to their
   counsel advising them of the bankruptcy filing, Cohen did not withdraw the motion,
   or notify the Debtor that any steps were taken to comply with the automatic stay of
   such litigation. <u>See</u>, <u>Exhibits</u> "A" <u>Demand Letter/Notice of Commencement</u> and "B"
   <u>Cohen Notice of Motion</u>.

28. Upon information and belief, also after the Filing Date, representatives of Cohen
   approached representatives of Scottsdale Insurance Company at a convention in Las
   Vegas, providing derogatory information regarding the Debtor's business in an
   apparent effort to undermine the Debtor's maintenance of directed liability insurance
   coverage. While the Debtor's insurance broker was able to respond to the allegations
   raised, the impact on the continuation and renewal of insurance and premiums is
   unclear at this time.

29. Thereafter, Cohen filed the motions to modify the automatic stay and for appointment
   of a Chapter 11 trustee, which were ultimately denied by the Court. The motions

were filed after the parties were unable to come to terms on a sale of business - - Cohen had entered into a confidentiality agreement in the case while they explored an acquisition of the business.

30. Notwithstanding, undaunted by the denial of the motions, within approximately one week after the hearings on the motions, Cohen sent out letters which appear to have gone out to all of the Debtor's shareholders, providing false and misleading information to the investors, including a recitation of the very allegations raised by Cohen in the motion for trustee which the Court had found were unsubstantiated.

31. The letters, a copy of one which is attached hereto as Exhibit "C", includes misleading information, given the impression that Cohen was somehow authorized to bring action on behalf of all equity holders - - Cohen's request to be deputized as estate representative was denied. The letters, as noted above, also recited the identical allegations of fraud and malfeasance raised and rejected by this Court as without evidentiary support. In fact, the letter combines elements from claims in the state court litigation with the bankruptcy case in such a way as to give the impression that Mr. Cline and/or the Debtor have committed fraud and malfeasance. The letter also goes on to in effect solicit investors support to reject operational changes, while the Debtor's plan of reorganization was in prospect.

32. The result of the foregoing, if not the design, was to interfere with the Debtor's efforts to raise additional funds from current investors and undermine the plan process. Under the plan, the Debtor intended to make a capital call on current investors, which it anticipated would raise between $300,000-$400,000, capital which would have been used to assist with the reorganization and for working capital.

10

While the Debtor notified investors that the letters were not authorized and were misleading, the consequences are less easily undone. In addition, such self help, on the heals of the denial of the motions for trustee, evidences a continuing predisposition by Cohen to disrupt the reorganization process. At the very least, such conduct evidence intentional actions which constitute harassment of the Debtor and interference with the reorganization process. Worse, such actions may be part of Cohen's wider plan to coerce a payment of a significant premium on their investment, ahead of all other investors (and to which it is not entitled) or to force the Debtor to liquidate the business at a fire sale, so that Cohen can either take control of the business for nominal consideration or more egregiously, for vindictive purposes.

33. Such conduct clearly constitutes intention acts in knowing violation of the automatic stay. Moreover, such conduct was willful, warranting sanctions against Cohen. In Atlantic Business, the Third Circuit, following the lead by the 9th Circuit, in *InRe Bloom,* 875 F.2d 224, 227 (9th Cir.1989), held that 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *In Re Bloom,* 875 F.2d at 227 [quoting *INSLAW, Inc. v. United States,* 83 B.R. 89, 165 (Bankr.D.D.C.1988).]; *See also Budget Service Co. v. Better Homes of Va.,* 804 F.2d 289, 290 (4th Cir.1986) ("Sanctions were properly assessed against lessor for willful violation of automatic stay, based on ample evidence to support conclusion that lessor knew of pending petition and intentionally attempted to repossess vehicles in spite of it.").

34. The bankruptcy courts have construed "willful" as used in the code to mean an intentional or deliberate act done with knowledge that the act is in violation of the stay. *See In Re Tel-A-Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D.Conn.1985); *In Re Forty-Eight Insulations, Inc.,* 54 B.R. 905, 909 (Bankr.N.D.Ill.1985); *Lansdale Family Restaurants Inc. v. Weis Food Service,* 977 F.2d 826, 829 (3rd Cir.1992)("It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional."). Punitive damages may also be awarded where the conduct was in bad faith.  Atlantic, (3rd Cir); KRYSTAL CADILLAC-OLDSMOBILE GMC TRUCK, INC., 337 F.3d 314 (3rd Cir. 2003).

35. In this case, Cohen/Insurance Designers have orchestrated a continuing an accelerating course of conduct in contravention of the automatic stay.  As provided above, first in pressing forward on a motion for payment of attorneys fees in Florida over a week after the Filing of the petition and notice to Cohen of the Commencement of the Case, and in failing to withdraw such motion after being notified that the actions were stayed by virtue of the Bankruptcy Filing.

36. Second, at a time when the Debtor was procuring additional insurance coverage to comply with the Court's direction, Cohen, through his agents attempted to undermine the underwriting of the insurance by providing derogatory information to the Debtor's insurance underwriter.

37. And finally, within little over one week after the Court denial of Cohen's motions to modify stay and for appointment of a Chapter 11 trustee, Cohen transmitted letters reciting the identical allegations of fraud and malfeasance rejected by the Court at the trustee hearing, implying that Mr. Cilione and the Debtor were involved in a fraud on investors and mischaracterizing the results of hearings on these very claims. Cohen also appeared to solicit rejection by the investors of the Debtor's plan to make operational changes in keeping with the changing demographic of the center, despite having no authorizing to do so and while a plan and disclosure were in prospect.

38. Such course of conduct, in particular, given the history of the relationship, clearly constitutes prohibited actions proscribed under settled bankruptcy law. The actions served to harass the Debtor and hinder the reorganization efforts, in particular after the Debtor filed a plan providing that it intended to raise additional capital from existing investors. Moreover, the actions were coercive in Cohen's attempts to force the Debtor out-of-business or to pay a significant premium to quiet Cohen.

39. Under the relevant authorities, in order to sustain a case for violation of the automatic stay, it is only necessary to show that the violating party new about the stay and that the actions it took were intentional. Here, it is acknowledged that Cohen new of the automatic stay. Similarly, it cannot be controverted that Cohen and Insurance Designers engaged in the other conduct, filing of the motion of for attorneys, contacted the Debtor's insurance underwriters, and transmitted/solicited investors with misleading information on the heals of having the very claims recited in the letter, rejected by the Court.

13

40. In addition, under FRBP 9020, the Court may enter an order of contempt for willful violation of the automatic stay. See, Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47, 51 (2nd Cir. 1976)(allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which the bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate" disregard of bankruptcy rules regarding requirements for relief), cert. denied, 97 S. Ct. 1107 (1977), rehearing denied, 97 S. Ct. 1670.

WHEREFORE, the Debtor respectfully requests the entry of an order holding Cohen and Insurance Designers of Maryland in contempt for willful violation of the automatic stay, directing that Cohen cease and desist from any actions to interfere with the business or reorganization, directing a further hearing on damages, including attorneys fees and punitive damages, and for such other and further relief as is just and proper.

Dated: Wilmington, Delaware
　　　  December 1, 2006

　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　BAKER & HOSTETLER LLP
　　　　　　　　　　　　　666 Fifth Avenue
　　　　　　　　　　　　　New York, New York 10103
　　　　　　　　　　　　　Douglas E. Spelfogel
　　　　　　　　　　　　　Richard J. Bernard
　　　　　　　　　　　　　Telephone:  (212) 589-4200
　　　　　　　　　　　　　Facsimile:  (212) 589-4201

　　　　　　　　　　　　　and

　　　　　　　　　　　　　PEPPER HAMILTON LLP

　　　　　　　　　　　　　/s/ James C. Carignan
　　　　　　　　　　　　　David B. Stratton (Bar No. 960)
　　　　　　　　　　　　　James C. Carignan (Bar No. 4230)
　　　　　　　　　　　　　Hercules Plaza, Suite 5100
　　　　　　　　　　　　　1313 N. Market Street
　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　Telephone: (302) 777-6500
　　　　　　　　　　　　　Facsimile: (302) 421-8390

　　　　　　　　　　　　　*Co-Counsel for the Debtor and Debtor in Possession*

15

Exhibit "A"

Baker Hostetler

Baker&Hostetler LLP

666 Fifth Avenue
New York, NY 10103-0001

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Douglas E. Spelfogel
direct dial: 212.589.4280
dspelfogel@bakerlaw.com

August 17, 2006

**Via Facsimile and Regular Mail**

Patrick J. Casey, Esq.
Boose Casey Ciklin Lubitz
Martens McBane & O'Connell
515 N. Flagler Drive - 18th Floor
West Palm Beach, FL  33401

Dear Mr. Casey:

We are bankruptcy counsel for Resort of Palm Beach LLC ("Resort"), which filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 31, 2006.  Pursuant to Section 362 of the Bankruptcy Code, all actions to enforce and/or collect upon any claims, suits, or other judicial process are automatically stayed.  Continuation of any actions against Resort or to otherwise adjudicate claims in which Resort is a party are void and subject the violating party to sanctions to the extent that any such enforcement activity is deemed willful.

A copy of the notice of commencement of case is attached for your convenience. Based upon the foregoing, demand is hereby made for you to immediately withdraw your motion for attorney's fees date filed on or about August 9, 2006 in contravention of the bankruptcy stay and so notify the court of the filing.

Your prompt attention to this matter is anticipated.

Thank you,

Douglas E. Spelfogel

cc:     Doug Hirsch, Esq.
        Robert Murphy, Esq..
        Frank Cilione, Managing Member

IN THE COUNTY COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CITYPLACE RETAIL, L.L.C.,

       Plaintiff,

v.

                           Case No. 50 2006 CC 006056XXXXMB RF

RESORT OF PALM BEACH, LLC,

       Defendant.

RECEIVED FOR FILING

AUG 17 2006

SHARON R. BOCK
CLERK & COMPTROLLER
PALM CIVIL DIVISION

_____/

## <u>NOTICE OF BANKRUPTCY</u>

       You are hereby notified of the filing of a case under Chapter 11 of the Bankruptcy Code in

the United States Bankruptcy Court for the District of Delaware on July 31, 2006 for Resort of Palm

Beach, LLC. The Bankruptcy Court has assigned a case number 06-10798 to this matter. See

attached proof of filing. The Chapter 11 case is now pending, and, pursuant to the provisions of 11

U.S.C. § 362(a), this case is therefore stayed until further order of the Bankruptcy Court.

Dated: August 2, 2006

                                        _____
                                   Richard J. Bernard (Fla. Bar No. 57266)
                                   BAKER & HOSTETLER LLP
                                   666 Fifth Avenue
                                   New York, NY 10103
                                   Telephone:   212.589.4200
                                   Facsimile:    212.589.4201

                                   *Counsel for Resort of Palm Beach, LLC,*
                                   *Debtor and Debtor in Possession*

101372017

## Open New Voluntary Bankruptcy Case

### U.S. Bankruptcy Court

### District of Delaware

Notice of Bankruptcy Case Filing

The following transaction was received from Carignan, James C. entered on 7/31/2006 at
8:23 PM EDT and filed on 7/31/2006

Case Name:       Resort of Palm Beach, LLC
Case Number:     06-10798
Document Number: 1

Docket Text:
Chapter 11 Voluntary Petition . Fee Amount $1039. Filed by Resort of Palm Beach, LLC.
(Attachments: # (1) Written Consent to Action# (2) List of 20 Largest Creditors# (3)
Creditor Mailing Matrix# (4) Declaration of Frank A. Cilione# (5) Certificate of Service)
(Carignan, James)

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\petition.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-0]
[8d42e0f041d5074351ac848274aa7b3b286f396ba5d5bb01614bf90a518f9b5e0d28
1fc39cd8f9bd9d7ce5512d4633bd8e2b09e6683e210a6ed2790d7dfc67de]]
Document description: Written Consent to Action
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\consent.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-1]
[913592932dc16457950a36144f9b1cf8c6b655cbacdadf1bd9d7ac0703218ebbe38f
5c71d6a1a3374c96407ea3aaba7af0db41d414a66c03a938f6f7214ecdb6]]
Document description: List of 20 Largest Creditors
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\creditor list.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-2]
[1be0534288fe69c3beb7e7bf3ad5f28208c0c91280584ca1da6fb9d40488cded18ee
0d3d77485e84e4d04530b6c50a0081ec4f3743fd51ec74246221d111a4c1]]
Document description: Creditor Mailing Matrix
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\matrix.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-3]
[2aa44fdbd9cc35194a283f23d543d2f72ebab130b07bd9a71f090c4d83b6a9edf733

dc4bb94c18a23d097f55660cb442090b205ff165b4f924f8f648fc60ba3a]]
Document description:Declaration of Frank A. Cilione
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\declaration.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-4]
[8e966b293bbf3c245a49800b808e7098280ed5896ea7ba1b47e874c6c3d2d60434f3
16d5a678b0ab2ae511b4b6bb032349ac8e4e324ef73ac0dbffc861fd25a7]]
Document description:Certificate of Service
Original filename:K:\E-Filing\Pepper Hamilton\07-31-06\cos.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2006] [FileNumber=5091742-5]
[060f05d1cd2249826f38a9f5f2eaeb55ac9eb8763da368bcbed4f32241678370a252
58d5e18859a89d8e1b51090bb331d957ae89b64e3a4f110e1d1e11aee67d]]


06-10798 Notice will be electronically mailed to:

James C. Carignan    carignaj@pepperlaw.com, wlbank@pepperlaw.com

United States Trustee    USTPREGION03.WL.ECF@USDOJ.GOV

06-10798 Notice will not be electronically mailed to:

**Exhibit "B"**

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA.
CIVIL DIVISION.

CASE NO: 502005CA011398XXXXMB AG

INSURANCE DESIGNERS OF MARYLAND,
INC., a foreign corporation,

      Plaintiff,

v.

RESORT OF PALM BEACH, LLC, a
Florida limited liability company,
FRANK CILIONE, and SHAMIN ABAS,

      Defendants.

_____/

COPY
RECEIVED FOR FILING

AUG 0 8 2006

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

## PLAINTIFF'S MOTION FOR AN AWARD
## OF ATTORNEYS' FEES AND COSTS

Plaintiff INSURANCE DESIGNERS OF MARYLAND, INC. ("INSURANCE DESIGNERS"), by and through its undersigned counsel, files this Motion for an Award of Attorneys' Fees and Costs. In support of the Motion, INSURANCE DESIGNERS states as follows:

1.    This Court granted INSURANCE DESIGNERS' Motion for Summary Judgment on July 10, 2006 pursuant to an order, a copy of which is attached as **Exhibit "A"**. In the order, the Court stated that the "Plaintiff is entitled to attorney's fees and costs in amounts to be determined on further hearing." (See **Exhibit "A"**).

2.    Attached as **Exhibit "B"** is the Affidavit of Jeffrey M. Garber, Esq., which sets forth the hours incurred by INSURANCE DESIGNERS' counsel in prosecuting this action and the hourly rates billed to and paid by INSURANCE DESIGNERS.

3.    Attached as **Exhibit "C"** is the Affidavit of Mitchell Paul, Esq., which sets forth the hours incurred by INSURANCE DESIGNERS' counsel in prosecuting this action and the hourly rates billed to and paid by INSURANCE DESIGNERS.

4.    INSURANCE DESIGNERS' entitlement to attorney's fees and costs is premised upon the Security Agreement and the Promissory Note which are attached to the Complaint, and which contain the following attorney's fee/costs provisions:

> In the event of a breach of this Agreement and/or the Note, the non-prevailing party shall pay the attorney's fees, disbursements and costs of the prevailing party.

Security Agreement, Section 7, para. 3.

> **Expenses.** Borrower promises to pay to Lender on demand by Lender all actual costs and expenses incurred by Lender in connection with the collection and enforcement of this Note, including, without limitation, actual attorneys' fees and expenses and all court costs.

Promissory Note, page 6, para. 11).

5.    The total amount of attorneys' fees and costs incurred by INSURANCE DESIGNERS in prosecuting this action is $23,000.00, and $2,274.06, respectively for a total of **$25,274.06.**

6.    Any additional attorneys' fees and costs incurred prior to the hearing of this matter will be the subject of a supplemental motion.

**WHEREFORE,** INSURANCE DESIGNERS respectfully requests that this Court issue an Order:

> A. Awarding INSURANCE DESIGNERS' attorneys' fees and costs as set forth above: and
>
> B. Granting INSURANCE DESIGNERS such other and further relief as the Court may deem just and proper.

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this ___ day of August 2006, to Robert W. Murphy, Esq., 1212 S.E. 2nd Avenue, Fort Lauderdale, FL 33316.

BOOSE CASEY CIKLIN LUBITZ
MARTENS McBANE & O'CONNELL
Attorneys for Plaintiff
515 N. Flagler Drive – 18th Floor
West Palm Beach, FL 33401
Tele:  561-832-5900
Fax:   561-820-0389

By: _____
PATRICK J. CASEY
Florida Bar No. 172514
JEFFREY M. GARBER
Florida Bar No. 102776

3

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA.
CIVIL DIVISION.

CASE NO: 502005CA011398XXXXMB AG

INSURANCE DESIGNERS OF MARYLAND,
INC., a foreign corporation,

       Plaintiff,

v.

RESORT OF PALM BEACH, LLC, a
Florida limited liability company,
FRANK CILIONE, and SHAMIN ABAS,

       Defendants.

_____/

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTS I, II, AND III OF THE COMPLAINT PURSUANT TO RULE 1.510 FLA. R.CIV.P.

**THIS CAUSE** having come before the Court upon Plaintiff's Motion for Summary Judgment With Respect to Counts I, II and III of the Complaint Pursuant to Rule 1.510, Fla.R.Civ.P., and the Court having heard argument of counsel and having been duly advised in the premises, it is hereby

**ORDERED and ADJUDGED** that Plaintiff's Motion is GRANTED.

Plaintiff is entitled to attorney's fees and costs in amounts to be determined on further hearing.

**DONE and ORDERED** at West Palm Beach, Palm Beach County, Florida, this _10_ day of _____July_____, 2006.

_____
JOHN J. HOY, Circuit Judge

Copies to:
Jeffrey M. Garber, Esq., Boose Casey Ciklin, et al., 515 N. Flagler Drive, 18th Floor, West Palm Beach, FL 33401
Robert W. Murphy, Esq., 1212 S.E. 2nd Avenue, Fort Lauderdale, FL 33316

**EXHIBIT**
*A*

JUL

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA.
CIVIL DIVISION.

CASE NO: 502005CA011398XXXXMB AG

INSURANCE DESIGNERS OF MARYLAND,
INC., a foreign corporation,

     Plaintiff,

v.

RESORT OF PALM BEACH, LLC, a
Florida limited liability company,
FRANK CILIONE, and SHAMIN ABAS,

     Defendants.

_____/

### AFFIDAVIT OF JEFFREY M. GARBER IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Before me, the undersigned authority, personally appeared Jeffrey M. Garber, who first being duly sworn, deposes and says:

1.     I am an attorney who is admitted to practice in the State of Florida. I am an associate with the law firm Boose Casey Ciklin, et al ("Boose Casey"), counsel for INSURANCE DESIGNERS OF MARYLAND, INC. ("INSURANCE DESIGNERS"), the Plaintiff in the above captioned matter, and as such, I have personal knowledge of all facts and circumstances relating to this matter as set forth herein. This Affidavit is submitted in support of INSURANCE DESIGNERS' Motion for an Award of Attorneys' Fees and Costs.

2.     I have reviewed the records of this law firm, true and correct copies of which are annexed hereto as composite **Exhibit "1"** (portions of the billing entries may have been redacted to protect information protected by privilege), which show that from June 28, 2005 through



EXHIBIT
B

July 10, 2006, attorneys have spent the following time in connection with this matter:

    A.   Jeffrey M. Garber, Esq.: 5.8 hours at the hourly rate of $275.00 and 31.60 hours at the hourly rate of $300. for a total of $11,075.00;

    B.   Patrick J. Casey, Esq.: 24.9 hours at the hourly rate of $400.00, for a total of $9,960.00;

    C.   W. J. Hunston III, Esq.: 1.4 hours at the hourly rate of $175.00 for a total of $245.00;

    D.   Linda Kyte, Paralegal: 1.3 hours at the hourly rate of $120.00, for a total of $156.00;

### TOTAL ATTORNEYS' FEES: $21,436.00

3.    In additional to the foregoing legal fees, the following costs have been expended on behalf of INSURANCE DESIGNERS:

| | |
|---|---|
| Photocopy: | $ 388.20 |
| Telecopy: | $ 224.00 |
| Court Filing Fees: | $ 331.00 |
| Service Fee: | $ 572.13 |
| Court Reporter Costs: | $ 343.80 |
| Long Distance Telephone: | $ 240.13 |
| Fed Ex: | $ 28.34 |
| **TOTAL COSTS:** | **$2,127.60** |

4.    The total amount of attorney's fees and costs incurred by INSURANCE DESIGNERS in prosecuting this action is $21,436.00, and $2,127.60, respectively for a total of $23,563.60.

5.    Any additional attorneys' fees and costs incurred prior to the hearing of this matter will be set forth in a supplemental affidavit.

2

FURTHER AFFIANT SAYETH NAUGHT.

I declare under the penalty of perjury that the foregoing is true and correct.

_____
JEFFREY M. GARBER

STATE OF FLORIDA            )
                            : SS.
COUNTY OF PALM BEACH        )

The foregoing instrument was acknowledged before me this ____4th____ day of

__August__, 2006, by JEFFREY M. GARBER, who is personally known to me or who has

produced _____ (type of identification) as

identification.

_____
Signature

_____
(Type/Print Name)
Notary Public

Commission No. _____

My Commission expires:

Cynthia J. Ray
Commission # DD530682
Expires April 15, 2010
Bonded Troy Fain - Insurance, Inc. 800-385-7019

SEAL

3

**Exhibit "C"**

Oct 23 06 07:15p

F

October 18, 2006

Mr. Rick VanBenschoten
875 Fifth Avenue, Suite 1801
New York, NY 10021

RE:    *Resort of Palm Beach, LLC
Bankruptcy*                                      Case No.: 06-10798-KG

Dear Mr. VanBenschoten:

I write this letter to you, as a fellow Member of and investor in Resort of Palm Beach, LLC, which operates a nightclub under the name "Resort" in West Palm Beach, Florida. As you may recall, you have invested in Resort (formerly NV of Palm Beach) at some time in the past. I obtained your name and address from a list Resort has filed.

On July 31, 2006, Resort of Palm Beach, LLC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"). The bankruptcy filings asserted that hurricanes, lawsuits and disputes with Resort's Landlord; among other things, necessitated filing for bankruptcy. The bankruptcy proceeding is ongoing in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (Case No. 06-10798-KG). Your name can be placed on the Service List if you file a request for notice with the Court.

Prior to the bankruptcy filing, information had been brought to my attention by several former employees of Resort about financial and operational issues involving Mr. Frank Cilione, who owns and controls the entity FACT Holdings Resort, LLC, the Manager of Resort. Because of such concerns, I took (at my expense) legal action derivatively on behalf of all equity holders, against FACT Holdings Resort, LLC and Frank Cilione in the United States District Court for the Southern District of New York (Case No. 06-CV-1139). The suit alleged, among other things, that:

1. Cilione siphoned Resort funds for personal use;
2. Cilione used Resort's cash, liquor and employees to support unrelated business operations;
3. Cilione failed to properly pay employee wages and taxes;
4. Cilione failed to make distributions to Members; and
5. Cilione failed to make required reports to Members.

Oct 23 06 07:15p

p

The bankruptcy filing in July 2006 put a "stay" on the New York derivative suit. I recently requested permission from the bankruptcy court to continue that suit, but such permission was not granted for the time being. We hope to be able to pursue these claims in the future, subject to the permission of the Bankruptcy Court, and to have all allegations against Mr. Cilione fully investigated and dealt with. In that regard, we also requested that the Court appoint a Trustee to oversee Resort's activities, but the Court also denied that request for the time being.

In order to protect your rights, you may want to consider doing one or more of the following:

1. Insist that all Members be fully informed of what is happening with Resort. Contact Mr. Cilione and demand financial and operational information.

2. Object to any club operational changes that you believe are wrong. I understand that the club may be changing its theme to "urban hip-hop". Tell Mr. Cilione that is <u>not</u> the upscale nightclub you invested in.

I am also providing you with Mr. Cilione's last-known contact information along with the address for the bankruptcy court.

Frank Cilione
Resort of Palm Beach, LLC
700 South Rosemary Avenue
West Palm Beach, FL 33401

Frank Cilione
Resort of Palm Beach, LLC
651 Okeechobee Boulevard, Suite 507
West Palm Beach, FL 33401

United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801
(302) 252-2900

Sincerely,

Jeffrey B. Cohen
300 Redland Court, Suite 105
Owings Mills, MD 21117
(410) 356-4020

# EXHIBIT C

## ORIGINAL

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 06-10798 (KG) |
| | ) | |
| RESORT OF PALM BEACH, LLC., | ) | |
| | ) | **HEARING DATE: DECEMBER 20, 2006 AT 2:00** |
| Debtor. | ) | **P.M. (EST)** |
| | ) | |
| | ) | **OBJECTION DEADLINE: DECEMBER 13, 2006** |
| | ) | **AT 4:00 P.M. (EST)** |
| | ) | |
| _____ | ) | **RE: DOCKET NO. 176** |

### MEMORANDUM OF LAW OF
### JEFFREY B. COHEN AND INSURANCE DESIGNERS OF
### MARYLAND, INC. IN RESPONSE TO DEBTOR'S MOTION
### FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND
### INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT
### <u>FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF</u>

Christopher D. Loizides ( No. 3968)
Michael J. Joyce (No. 4563)
LOIZIDES & ASSOCIATES
Legal Arts Building
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:      (302) 654-0248
Facsimile:       (302) 654-0728
E-mail:          loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance*
*Designers of Maryland, Inc.*

DATED:  December 13, 2006

194
12/13/06

061213101718.doc

## TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING                                    1

SUMMARY OF ARGUMENT                                                                    1

STATEMENT OF FACTS                                                                     2

    A.    Respondents' Investments in Resort and Resort's Failure to Honor Its
Obligations to Respondents.                                                            2

    B.    Resort's Bankruptcy Filing                                             5

    C.    The Alleged Bases for the Stay Violation                               7

        1.    The Filing of the Motion to Determine Legal Fees and the
Discontinuation of the Florida Action.                                                 7

        2.    Alleged Communications with Resort's Insurance Underwriters            8

        3.    The Letter to Members Informing Them of the Bankruptcy Filing and the
Derivative Action.                                                                     8

ARGUMENT                                                                               10

    A.    The Filing of the Fee Motion in the Florida Action Did Not Injure the Debtor. 11

    B.    The Alleged Statements to the Debtor's Underwriters and the Letter to Members
Do not Constitute Violations of the Stay as a Matter of Law.                           13

        1.    Mr. Cohen's Statements Were Not Acts to Obtain Control of Property of
the Estate under 11 U.S.C. § 362(a)(3)                                                 14

        2.    Mr. Cohen's Statements Were not To Collect a Pre-Petition Debt under
11 U.S.C. § 362(a)(6).                                                                 16

        3.    Mr. Cohen's Actions Were not "Willful" Stay Violations.                19

    C.    Mr. Cohen's Letter to Members is True Speech Protected by the United States
Constitution.                                                                          21

    D.    Section 362(k) of the Bankruptcy Code Does not Apply to Debtors that are not
"Individuals."                                                                         24

    E.    Contempt Sanctions are Not Warranted                                   27

CONCLUSION                                                                             27

# TABLE OF AUTHORITIES

## Federal Cases

Acands, Inc. v. Travelers, 435 F.3d 252, 261 (3d Cir. 2006), cert den. 126 S. Ct. 2291    12
Brown v. Chaney, 469 U.S. 1090, 1096 n.7 (1984)    25
Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 86 (3d Cir. 1988)    18
Budget Service Co. v. Better Homes of Virginia, 804 F.2d 289, 292 (4th Cir. 1986)    25
Chowdhury v. Reading Hospital and Medical Center, 677 F.2d 317, 324 (3d Cir. 1982)    25
Edisto Resources v. McConkey, 158 B.R. 954, 958 (Bankr. D. Del. 1993)    20
Gordon v. Dennis Burlin Sales, Inc., 174 B.R. 257, 259-260 (Bankr. N.D. Ohio 1994)    17
In re Andrus, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995)    18
In re APF, Co., 274 B.R. 408, 417 (Bankr. D. Del. 2001)    11
In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir. 1990)    19, 24, 25
In re Chateaugay Corp., 920 F.2d 183, 186 (2nd Cir. 1990)    26
In re Cortellessa (Cortellessa v. Cortellessa), Bankr. No. 05-24258 REF, Adv. No. 06-2082 REF, 2006 WL 1997407, *5-*6 (Bankr. E.D. Pa. 2006)    20
In re Crudup, 287 B.R. 358, 363 (Bankr. E.D.N.C. 2002)    18
In re Goodman, 991 F.2d 613, 619 (9th Cir. 1993)    26
In re Just Brakes Corporate Systems, Inc., 108 F.3d 881, 885 (8th Cir. 1997)    26
In re Marvel Entertainment Group, 209 B.R. 832. 838 (D. Del. 1997)    14
In re National Service, 742 F.2d 859 (5th Cir. 1984)    21, 22
In re Outlaw, 66 B.R. 413, 416 (Bankr. E.D.N.C. 1986)    17
In re Smith, 185 B.R. 871, 872 (Bankr. M.D. Fla. 1994)    16, 17
In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986)    17
Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539,1552 (11th Cir. 1996)    26
Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors, Corp., 337 F.3d 314, 320 n. 8 (3d Cir. 2003)    19
Lansdale Family Restaurants Inc. v. Weis Food Service, 977 F.2d 826, 829 (3d Cir. 1992)    19
McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509 (3d Cir. 1997)    7
University Medical Center v. Sullivan, 973 F.2d 1065, 1089 (3d Cir. 1992)    19, 20

## State Cases

Wilderman v. Wilderman, 328 A.2d 456, 458 (Del. Ch. Ct. 1974)    23

## Federal Statutes & Rules

11 U.S.C. § 362(a)(3)    14
Fed. R. Evid. 408    5
U.S.C. § 362(a)(6)    16

## State Statutes

18 Del. Code sec. 18-1001    23
6 Del. Code § 18-305    5

Jeffrey B. Cohen ("Cohen") and Insurance Designers of Maryland, Inc. ("IDMD", or with Cohen "Respondents") submit this objection to the motion of Resort of Palm Beach, LLC ("Resort" or the "Debtor") for entry of an order holding Respondents in contempt for violation of the automatic stay and for related relief (the "Motion").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Debtor has filed a motion to hold Respondents in contempt for writing a letter to fellow members of the Debtor informing them of the bankruptcy, allegedly communicating with someone related to the Debtor's insurance, and filing a motion in a state court proceeding that was immediately discontinued following receipt of formal notice of the bankruptcy.  Respondents oppose the Motion and request that it be dismissed as a matter of law.

## SUMMARY OF ARGUMENT

The Motion is premised on the commonly-cited concept of the broad application of the automatic stay.  However broad the automatic stay may be, section 362(a) of the Bankruptcy Code simply does not enjoin every action that a debtor finds objectionable or even every action that may adversely affect the debtor or the estate. The Motion refers to three actions that allegedly violate the stay: (1) unidentified statements that Mr. Cohen allegedly made concerning the Debtor's insurance; (2) a letter that Mr. Cohen sent to the Debtor's other members informing them for the first time of the Resort bankruptcy; and (3) the filing of a motion by IDMD's Florida attorneys one week following the filing of the bankruptcy, which was discontinued immediately following receipt of notice from Debtor's counsel. As to (1) and (2), these actions do not constitute stay violations as a matter of law as neither of them represents an effort to pursue a claim against the Debtor,

to collect a debt owed by the Debtor or to take possession or control of property of the estate. As to (3), while the filing of the motion was admittedly a technical stay violation, IDMD immediately discontinued prosecution of that motion upon receiving formal notice of the bankruptcy such that Debtor was not injured. Because Respondents' actions were either not stay violations as a matter of law or, as to (3), resulted in no harm to the Debtor, the Motion should be denied.

## STATEMENT OF FACTS

**A.    Respondents' Investments in Resort and Resort's Failure to Honor Its Obligations to Respondents.**

Mr. Cohen and his family have been in the insurance business for 32 years. In 2001, Mr. Cohen formed his own company, IDMD. IDMD focuses on providing insurance in the entertainment industry. Respondents are very familiar with the entertainment industry and its special insurance needs. IDMD is perhaps unique among insurance agencies that focus on the entertainment industry in that IDMD not only obtains insurance, but also actively assists its clients in minimizing their risk of loss and managing claims. Despite its relatively brief existence, IDMD has acquired an excellent national reputation in the field.[1]

In 2002, Frank Cilione approached Mr. Cohen with the idea of opening an upscale nightclub in West Palm Beach Florida. Mr. Cohen believed that this idea had significant possibilities, and purchased two Class A memberships in the Debtor for $50,000 cash. More than two (2) years passed after the investment until the club opened, during which

---

[1] Debtor impertinently refers to the fact that IDMD voluntarily paid a small civil fine to the State of Maryland based on the State's allegation that IDMD had sold insurance without an appropriate license to one customer who complained. IDMD did *not* agree with the State's assessment of a violation, but because IDMD's relationship with the State is very important, decided to pay the fine voluntarily rather than expend significant legal resources raising a challenge.

time no information was provided to investors about the status of opening or the handling of invested funds. IDMD also later provided insurance to Debtor for a short time, and, as part of its ordinary business practices, also provided Debtor with guidance on how to reduce its risk of loss.

In 2004, Mr. Cilione told Mr. Cohen that Resort lacked sufficient funds to buy a liquor license and have operating capital to open its doors. As that license and operating capital were critical to Resort's operations, Cohen agreed to invest $75,000 cash in Resort's parent company, FACT Holdings, LLC ("FACT") so that Resort could obtain a liquor license. In exchange for that critical infusion of cash, FACT agreed that Cohen would be entitled to the same rights as other members of FACT. FACT subsequently refused to honor its commitment to provide Cohen with equal rights in FACT, forcing Mr. Cohen to sue FACT and Mr. Cilione in Florida to compel compliance with their agreement. At the same time as Cohen invested in FACT, IDMD lent Debtor $75,000 for operating capital.

Later in 2004, Mr. Cilione again told Mr. Cohen that Resort needed money for operations. IDMD lent $200,000 cash under a secured promissory note.[2] Without Respondents' time-sensitive financial assistance, it's fair to say that Resort would never have opened and Resort's investors would have lost their entire investment. Resort subsequently defaulted under the $200,000.00 loan by failing to make a timely payment and bouncing a check on Respondents. IDMD then filed suit in Florida to enforce the note.

The relationship between Respondents and Debtor began to sour quickly despite Respondents' financial support. Under sections 4.10, 5.17 and 12.2 of Resort's

---

[2] This is in addition to another $75,000 loan from Mr. Cohen that Debtor paid.

operating agreement (the "Operating Agreement"), Resort was required to provide all of its members with tax returns and quarterly financial reports, and also permit members to review Resort's financial records.  Despite repeated demands, Resort refused to provide Mr. Cohen with any reports after about the first quarter of 2005.[3]  Mr. Cohen also continually received numerous complaints from employees of Resort of how the club was being mismanaged.  These complaints included inadequate security to prevent violence on the club premises, drug dealing by Resort employees and security guards, sales of alcohol to underage patrons, illegal purchases of retail alcohol, verbal abuse of employees, failure to pay employees and to make appropriate withholding payments, failure to pay vendors and intermingling of assets with the Tsunami restaurant.  When Mr. Cohen raised these concerns with Mr. Cilione, he was essentially informed that it was none of his business.  As this Court is aware, Mr. Cohen, in his capacity as a member of Resort, subsequently filed a derivative action in New York (the "Derivative Action") based on Mr. Cilione's alleged mismanagement of the club.

Mr. Cohen and Mr. Cilione did have discussions about Respondents' releasing their claims and interests in Resort.  Mr. Cohen's proposals were based on Respondents' best assessment of the likely revenue and profits from the club, which was all Respondents could go on given Debtor's refusal to provide Mr. Cohen with any financial information.  Contrary to Debtor's allegations, there was no attempt to extract a

---

[3] Mr. Cilione has stated that he refused to provide Mr. Cohen with financial reports after this time because Mr. Cohen had allegedly "forfeited" his interest in Resort due to Mr. Cohen's alleged violation of the non-compete provisions of the Operating Agreement.  These allegations are based on nothing other than the fact that one of Resort's former employees and a long-time friend of Mr. Cohen's, Josh Sagman, had discussions with Mr. Cohen about opening an entertainment bar in Miami—plainly not a competing market.  Mr. Cohen eventually decided not to go forward with this plan.  In any event, Mr. Cilione has no authority to simply declare that a member of Debtor is no longer a member.

"premium"—and in any event these negotiations are inadmissible settlement discussions under Fed. R. Evid. 408.

Mr. Cohen eventually was forced to make a formal demand for documents under 6 Del. Code § 18-305. Resort never even responded to that request. Mr. Cohen made a second demand for documents, which again Resort ignored. Faced with Resort's complete refusal to provide him with *any* financial or business information to which he was entitled under both the Operating Agreement and the Delaware Code, Mr. Cohen was forced to sue Resort in the Delaware Court of Chancery to compel Resort's compliance with its legal obligations.

### B.    Resort's Bankruptcy Filing

On July 31, 2006 (the "Petition Date"), one day after Resort defaulted in the Chancery Court action, Resort filed its chapter 11 petition. Although the matrix attached to the petition lists IDMD and Mr. Cohen as notice parties, neither received formal notice of the bankruptcy filing. In fact, Debtor did not provide *any* notice of its bankruptcy filing to its equity holders, as required under Fed. R. Bank. P. 2002(d), until November, 2006 when the U.S. Trustee brought this issue to the Court's attention in the context of Debtor's section 1129(e) motion.[4]

Mr. Cohen and Mr. Cilione then entered into discussions, at Mr. Cilione's suggestion, concerning the possible sale of the club to Mr. Cohen. Mr. Cohen requested basic financial documents, but essentially received only those documents that Resort was

---

[4] Significantly, Debtor did not file a list of equity holders with the petition as required by Fed. R. Bank. P. 2002(d). In response to a motion to dismiss by the U.S. Trustee, Debtor eventually filed a list of equity holders on September 1, 2006, D.I. 53. That list, however, did not comply with Rule 1007(a)(3), which requires disclosure of full names and addresses of equity holders, in that it only listed the first initial and last name of Resort's members. Again, the US Trustee was forced to bring this to Debtor's attention before Debtor filed a revised list of equity holders on October 9, 2006, D.I. 113.

required to file with the Bankruptcy Court such as recent tax returns and financial statements.[5] Due to the lack of responsiveness, Mr. Cohen gave up attempting to deal with Mr. Cilione and proceeded to file a motion for the appointment of a trustee based in large measure on information received from former employees. The Court denied this Motion in part because much of the evidence presented was deemed speculative or inadmissible hearsay.[6]

Following this hearing, Respondents again renewed their efforts to obtain access to Resort's financial records. Unsurprisingly, although the Debtor had cited to the availability of Fed. R. Bankr. P. 2004 as a reason to deny Respondent's alternative request for the appointment of an examiner, the Debtor flatly refused to produce *any* documents in response to Respondents' request. Instead, Debtor filed the instant Motion, no doubt in an effort to persuade the Court not to permit Respondents' access to Debtor's records so that they may conduct an accounting.

---

[5] Even these documents were not filed with the Court until the U.S. Trustee raised the issue in her motion to dismiss.

[6] Respondents would again mention that there were a number of uncontested facts put on the record at that hearing including the facts that (1) Resort failed to provide Mr. Cohen with financial information despite repeated demand, (2) Resort failed to make certain wage payments to and withholding tax payments for employees in a timely fashion, (3) Mr. Cilione personally bought liquor for Resort at retail establishments in violation of applicable Florida law, (4) due to non-payment of phone bills, Resort ran a phone line through a money access machine to process credit card payments, (5) Resort sometimes provided services or liquor to Tsunami, and vice versa, another establishment controlled by Mr. Cilione, (6) a security guard was arrested for narcotics dealing at Resort, (7) several of Mr. Cilione's past business ventures into the club and restaurant business have failed, (8) Resort failed to pay workers' compensation for a time, (9) Resort failed to maintain proper liability insurance for a time, (9) following the Petition Date, Resort did not timely comply with its obligations to file schedules, tax returns, financial statements and other documents with the Court, and (10) Resort did not timely file a list of equity holders and the original list filed did not comply with Bankruptcy Rule 1007(a)(3).

C.    **The Alleged Bases for the Stay Violation**

    1.    **The Filing of the Motion to Determine Legal Fees and the Discontinuation of the Florida Action.**

Debtor's first basis for the Motion was IDMD's filing of a motion for a determination of the amount of legal fees due in the Florida Action (the "Fee Motion"). Just before the Petition Date, on July 10, 2006, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Florida Court") entered summary judgment in favor of IDMD finding that IDMD had a right to an award of attorneys' fees and costs under the note subject to that action.[7] A copy of that order is attached as Exhibit "A".

Due to the lack of any formal notice to IDMD or Mr. Cohen, Respondents only learned of Debtor's bankruptcy filing indirectly after undersigned counsel for Respondents received a solicitation call from a Delaware attorney attempting to form a committee on August 2, 2006. Apparently due to a miscommunication or misunderstanding, IDMD's Florida counsel filed the motion for a determination of the amount of legal fees due without expressly limiting that request to apply only to the co-defendants.[8]

---

[7] Under applicable Florida law, requests for awards of attorneys' fees are adjudicated in a two-step process. First, the Court will determine whether the party requesting the award is entitled to an award of fees. If the Court decides that an award of fees is proper, the Court will then hear evidence concerning the appropriate amount of the award.

[8] The general rule of law is that the automatic stay does not extend to protect third party co-debtors or guarantors. See McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509 (3d Cir. 1997) (Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a "debtor." . . . As a consequence "it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor."). Respondents recognize that in *unusual circumstances* the stay has been applied to third parties where the assets to satisfy any third-party claim will be paid by the estate. Id. at 509.

Promptly after the filing of the Fee Motion, counsel to IDMD sent a letter to Florida counsel for IDMD informing them of the stay and requesting that IDMD desist in any further prosecution of the Florida Action. See letter attached as Exhibit "B". The letter further requested the formal withdrawal of that motion. Debtor also filed a notice of bankruptcy in the Florida Action. Following the receipt of that letter, IDMD and its Florida counsel immediately ceased all prosecution of the Florida Action and the Fee Motion. Indeed, in recognition of the stay, IDMD later filed a motion for relief from stay to pursue the Florida Action, which was denied. Although not required to do so as the Fee Motion was void *ab initio*, in an abundance of caution, IDMD also subsequently withdrew the Fee Motion. Following the Petition Date, Debtor was not required to do anything in the Florida Action other than write the letter to IDMD's Florida counsel. Accordingly, Debtor has not been injured as a result of the mere filing of the Fee Motion.

### 2.    Alleged Communications with Resort's Insurance Underwriters

Debtor's second alleged basis for a stay violation is certain unidentified communications that Mr. Cohen supposedly made concerning Debtor's insurance. Debtor does not allege when such communications were made, to whom they were made or the substance of such communications. Debtor also concedes that it has suffered no injury from such communications.

### 3.    The Letter to Members Informing Them of the Bankruptcy Filing and the Derivative Action.

The last alleged basis for Debtor's Motion is the fact that Mr. Cohen sent letters to Debtor's members informing them of the bankruptcy filing and the Derivative Action. A copy of such a letter (the "Notification Letter") is attached as Exhibit C. Respondents

would stress that at the time this letter was mailed, and as reflected on the docket, Debtor had provided no formal notice of the bankruptcy to its members as required by Fed. R. Bank. P. 2002(d).

Indeed, Respondents were informed by one member that when he called Mr. Cilione in September, 2006 to inquire as to Resort's business performance, Mr. Cilione not only neglected to tell him about the bankruptcy, but assured the member that everything was fine. At least one member has told Respondents that he knew nothing of the bankruptcy filing before receiving Mr. Cohen's letter. In view of Debtor's failure to comply with its obligation to formally notify its equity holders of the bankruptcy filing, it is more than a little ironic that Debtor complains of Mr. Cohen's letter.

In addition to informing the members of the bankruptcy filing, the Notification Letter also told the members about the pending derivative action and summarized the allegations in that action. The letter stressed that the derivative action merely _alleged_ certain facts. The letter does not state or imply that any court has made such findings. Of course, the complaint in the Derivative Action is a matter of public record and is available for anyone to review.

The letter also notes that Respondents filed a motion for the appointment of a trustee and for relief from stay and correctly states that these motions were denied "for the time being" (i.e. without prejudice). Contrary to Debtor's statements, the letter in no way states, suggests or implies that Mr. Cohen has ever been appointed by this or any other Court as a representative of the members. The letter merely states a basic fact about the Derivative Action: that Mr. Cohen did not bring this suit in his own capacity,

but rather on behalf of the company for the benefit of all members—as is the case in every derivative action.

Finally, the letter states that Resort intends to change the image of the club to one radically different from the club image that the members were sold on in order to persuade them to invest. While Debtor claims that this statement somehow undermines the Debtor's plan, there is nothing in the combined plan and disclosure statement that even addresses the issue of a change (or lack of change) in Resort's image.

## ARGUMENT

The Motion's three factual allegations do not provide a basis for an award of damages for violation of the automatic stay or for civil contempt. As to the filing of the Fee Motion, while this was technically a stay violation, Debtor has not been injured by the filing of that motion. As to the unidentified statements concerning insurance and the letter to members, these statements do not constitute violations of the automatic stay as a matter of law because they do not involve actions to collect a debt or to control property of the estate. These statements are also subject to protection under the First Amendment of the U.S. Constitution. Finally, because Mr. Cohen's actions were not done with the intent of violating the stay, and without any knowledge or notice that he could be held in contempt, civil contempt is not appropriate. For these reasons, the Motion must be denied.

A.    **The Filing of the Fee Motion in the Florida Action Did Not Injure the Debtor.**

Section 362(k)[9] of the Bankruptcy Code provides:

> (k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

Significantly, this section does not authorize the Court to impose sanctions for *any* violation of the automatic stay. First, sanctions may only be imposed where the debtor has been "injured." Furthermore, only actions that are "willful" may serve as a basis for the award of sanctions.

Here, it must be emphasized that IDMD's principal, Mr. Cohen, is not an attorney. Respondents would also urge the Court to keep in mind that while the automatic stay has an almost sacrosanct aura about it for those who are familiar with the bankruptcy process, most non-lawyers do not even know of its existence and most non-bankruptcy lawyers know little about it. Accordingly, it simply never occurred to IDMD that it should advise its own attorneys about the legal scope of a statute and reasonably assumed that its Florida counsel would follow a proper course of conduct.

After receiving a letter from Debtor's counsel, IDMD and its Florida counsel ceased all activity in the Florida action. While it may be true that IDMD did not

---

[9] The Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. Law No. 109-8 (2005) ("BAPCPA") redesignated what had been subsection 362(h) as subsection 362(k). Throughout this brief and when referring to case law, this subsection will be referred to as "section 362(k)" regardless of whether the BAPCPA was in effect at the time any particular case was decided.

immediately withdraw the motion on request of Debtor's counsel, IDMD was not required to do so. There is nothing in section 362 that would sanction a party for *not* doing something. See, e.g., In re APF, Co., 274 B.R. 408, 417 (Bankr. D. Del. 2001) (holding that failure to turn over disputed funds post-petition was not a stay violation in that to show a stay violation, the debtor "must show that NYLCare engaged in conduct which was an affirmative post-petition act manifesting either an exercise of control over property of the estate, or collecting, assessing or recovering such property".). Indeed, the Fee Motion, at least insofar as it purported to apply to the Debtor, had no legal affect and was *void ab initio*. See generally Acands, Inc. v. Travelers, 435 F.3d 252, 261 (3d Cir. 2006), cert den. 126 S. Ct. 2291. In any event, IDMD did not pursue the Florida Action after August 2, 2006 and Debtor has not been required to respond to the Fee Motion or to do anything else in the Florida Action, other than write a letter and file a notice of bankruptcy.

IDMD's respect for the automatic stay and its clear intention, following the discovery of the error, is shown by the fact that it subsequently filed a motion for relief from stay to pursue the Florida Action. If IDMD did not respect this Court's authority and the scope of the automatic stay, it would not have filed a request for relief from stay.

Finally, even if this Court were to hold that IDMD willfully violated the automatic stay, Debtor can show no injury resulting from such violation as required by the express language of section 362(k). Debtor was not required to do anything in response to the filing of the motion other than writing a short letter. Once IDMD's counsel received that letter, it immediately desisted from pursuit of the Florida Action. Debtor makes a mountain out of a molehill. Given the lack of material prejudice to the

Debtor, along with the fact that IDMD's counsel immediately ceased the prosecution of the Florida Action once it received notice from Debtor's counsel of the bankruptcy, an award of sanctions is unwarranted.

### B.    The Alleged Statements to the Debtor's Underwriters and the Letter to Members Do not Constitute Violations of the Stay as a Matter of Law.

The scope of the automatic stay is quite broad.  However, section 362(a), by its express terms, does not enjoin all activity that might be offensive, might injure the Debtor, or that the Debtor simply doesn't like.  Rather, the automatic stay enjoins only the specific conduct described in section 362(a).  Section 362(a), subject to certain exceptions not relevant here, defines the scope of the automatic stay and provides, in pertinent part:

> "[A] petition filed under . . . this title . . . operates as a stay . . .of—

> (1)    the commencement or continuation . . .*of a judicial. . .proceeding* against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2)    the *enforcement*, against the debtor or against property of the estate, *of a judgment* obtained before the commencement of the case under this title;

> (3)    any act to obtain *possession of property of the estate* or of *property from the estate* or to exercise control over *property of the estate;*

> (4)    Any act to create, perfect or enforce *any lien* against property of the estate;

> (5)    Any act to create, perfect, or enforce against property of the debtor *any lien* to the extent that such lien secured a claim that arose before the commencement of a case under this title;

(6)    Any act to *collect, assess, or recover a claim against the debtor* that arose before the commencement of the case under this title;

(7)    The *setoff* of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

(emphasis added).

It is beyond reasonable argument that subsections (a)(1), concerning legal actions, (a)(2), concerning enforcement of judgments, (a)(4) and (a)(5), concerning enforcement and perfection of liens, and (a)(7), concerning setoff, do not even arguably apply to Mr. Cohen's statements. While the Debtor is unclear in its Motion as to which subsections it relies on, it appears that the Debtor may be relying on (a)(3) concerning acts to exercise control or possession over property of the estate, or (a)(6) concerning efforts to collect on a pre-petition debt. Neither of these subsections are implicated based on the facts even as alleged.

### 1.    Mr. Cohen's Statements Were Not Acts to Obtain Control of Property of the Estate Under 11 U.S.C. § 362(a)(3)

Mr. Cohen's statements consisted of his voicing his concerns over the bankruptcy to other members of Resort and, allegedly, communicating with someone concerning insurance policies. It is difficult to conceive how either of these actions could constitute acts to obtain control or possession of property of the estate.

In order to be enjoined by the automatic stay under section 362(a)(3), the action must be one that directly interferes with the Debtor's use and enjoyment of particular estate property. In delineating what may constitute an act by an equity holder to exercise control over the Debtor's estate, the Delaware District Court has been clear that actions by equity holders to exercise their corporate governance rights do not constitute

violations of the automatic stay. See In re Marvel Entertainment Group, 209 B.R. 832. 838 (D. Del. 1997) (in overturning the Bankruptcy Court's decision holding that the automatic stay prohibited the exercise of shareholder voting rights, the Court stated moreover, "shareholders should have the right to be adequately represented in the conduct of a debtor's affairs, particularly in such an important matter as the reorganization of the debtor.') (citations omitted).

Here, the Notification Letter was not an act by Mr. Cohen to control estate property. The letter merely states (1) that Resort has filed for bankruptcy – something that Resort should have told its members but did not; (2) that Mr. Cohen had brought a derivative action alleging breaches of fiduciary duty by Mr. Cilione—a true fact that is a matter of public record; (3) that members should consider contacting Resort to request financial information—something that the members have a right to do under the Operating Agreement, the Delaware Code *and* the Bankruptcy Code; and (4) urging members to voice any objection to changing the image of the club from an upscale nightclub to an urban hip-hop location. None of these statements represents an effort to take control of the Debtor's property.

In particular, the fourth statement merely expresses Mr. Cohen's frustration with the fact that Mr. Cilione is apparently considering changing the entire theme and image of the club without contacting all of the Debtor's members. Here, it should be borne in mind that it is essential in the context of corporate governance that equity holders be able to communicate with one another. Interpreting section 362(a) to place a permanent gag order on all equity holders would eliminate the ability of equity holders to protect their rights or share information. Moreover, it has been Debtor's position throughout these

proceedings that the members of Resort *have no* managerial rights so that the best they could do is to voice their opinion. If the members have no ability to exercise any control over Resort anyway, it is legally impossible that asking fellow members to voice their opinion could somehow be an act to exercise control over estate property. Urging fellow members of Resort simply to speak their mind and demand fair treatment cannot constitute a violation of the stay.

As to Debtor's suggestion that contacting members somehow interferes with the plan process, it is important to bear in mind that under the Debtor's proposed plan of reorganization (the "Plan", Docket No. 153), equity holders are *unimpaired* and hence have no voting rights under section 1126(f). And again, as the Debtor's Plan does not even mention anything about the change in club theme one way or another, it is unimaginable that mentioning this specific fact somehow undermines the Plan confirmation process. Moreover, a stay violation must consist of something more tangible than a general complaint of "interference."

As for Mr. Cohen's alleged and unidentified statements to the Debtor's underwriters, again it is difficult even to conceive how this could be a stay violation. Simply making disparaging or distasteful remarks cannot be a stay violation. See cases cited in section 2 below. While the Debtor may not be happy with this alleged action, it does not represent an attempt to control the Debtor or its property.

## 2.    Mr. Cohen's Statements Were not To Collect a Pre-Petition Debt under 11 U.S.C. § 362(a)(6).

To the extent that the Debtor relies on section 362(a)(6), enjoining efforts to collect a pre-petition debt, its position rests on equally weak foundations. In order to

show a violation of 362(a)(6), there must be evidence of specific conduct that was related to the collection of a debt. No such evidence exists here.

Debtor makes a misleading argument that any form of "harassment" may constitute a stay violation. See Motion, p. 8. Debtor relies substantially on In re Smith, 185 B.R. 871, 872 (Bankr. M.D. Fla. 1994). In the Smith case, a creditor of the debtor wrote an angry letter to the debtor's employer that specifically referenced the creditor's unpaid claim. The court in Smith referred to legislative history that "Section 362(a)(1) interacts with Section 362(a)(6) to prevent **harassment of the debtor with respect to prepetition claims.**" In re Smith, 185 B.R. at 872 (citing USSCAN 1978, p. 5787) (emphasis added). While the Smith decision is not a model of clear reasoning, the authority cited in Smith shows that 362(a)(6) is limited to its terms—*i.e.* it enjoins acts to collect a prepetition debt, not all acts that the debtor might find "harassing."

Mere disparaging or insulting words that do not constitute a clear attempt to collect on a prepetition debt do not violate the automatic stay. See Gordon v. Dennis Burlin Sales, Inc., 174 B.R. 257, 259-260 (Bankr. N.D. Ohio 1994). In rejecting the debtors' contention that various vulgar epithets directed against them in public violated the automatic stay, the Court stated:

> Mere words, although conceivably disparaging, distasteful or denigrating, without a clearly manifested attempt to recover on a prepetition claim (sec. 362(a)(1)) to enforce a prepetition judgment (sec. 362(a)(2)), or to accomplish any other act expressly proscribed by the several subsections under section 362(a) is insufficient to satisfy the elements of sec. 362(h). *See, In re Outlaw,* 66 B.R. 413, 416 (Bankr. E.D.N.C. 1986). (Creditor's conduct of parking his car outside debtor's home all night did not violate the stay.)

Gordon, 174 B.R. at 259.

Key in the Court's reasoning was the fact that the debtors did not satisfy their burden of proof that during the verbal exchange, the defendants said anything concerning their claims in the bankruptcy. Id. See also In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986) (in reversing bankruptcy court's decision to enjoin creditor from parking a truck outside debtor's business with sign that said "Crime doesn't pay, Stonegate Auto Alarms the Same Way", court noted that merely annoying conduct, even if potentially injurious to the debtor, does not violate the automatic stay). The Gordon and Stonegate decisions are in harmony with the Third Circuit's pronouncement that the "respite [from the automatic stay] is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 86 (3d Cir. 1988) (reversing imposition of damages on credit union for stating that it would terminate services if its debt were not reaffirmed).

Those cases that have found that harassing speech violated the stay have done so based on a finding that the speech in question was intended to pressure the debtor into paying a prepetition debt. E.g. In re Andrus, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995) (finding that signs erected by creditor constituted an effort to collect a discharged debt and were not protected free speech); In re Crudup, 287 B.R. 358, 363 (Bankr. E.D.N.C. 2002) (holding that harassing letter that specifically enumerated amount of prepetition debt represented an effort to collect that debt in violation of section 362(a)(6)).

None of Mr. Cohen's acts were to collect a pre-petition debt. Preliminarily, it must be stressed that Mr. Cohen, in his personal capacity, does not hold any claims against the Debtor. In any event, neither the Notification Letter nor the alleged

unidentified statements to the Debtor's insurance underwriters evidence any intention to collect a pre-petition debt. Because Mr. Cohen's actions were not to control estate property and were not to collect a debt, they are not violations of the automatic stay. Accordingly, Debtor's Motion should be denied as a matter of law.

### 3.    Mr. Cohen's Actions Were not "Willful" Stay Violations.

Even if this Court were to hold that Mr. Cohen's statements violated the automatic stay, sanctions may not be awarded because his statements were not "willful." In the Third Circuit, there is a line of authority that proof of "willfulness" under section 362(k) "'does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.'" Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors, Corp., 337 F.3d 314, 320 n. 8 (3d Cir. 2003) quoting Lansdale Family Restaurants Inc. v. Weis Food Service, 977 F.2d 826, 829 (3d Cir. 1992). Accord In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir. 1990). However, this general rule of law is subject to the limitation set forth by the Third Circuit in University Medical Center v. Sullivan, 973 F.2d 1065, 1089 (3d Cir. 1992).

In University Medical Center, the Third Circuit acknowledged and re-affirmed its prior holding in Atlantic Business that willfulness does not require "that there be a specific intent to violate the automatic stay, but rather that the acts violating the stay be intentional." University Medical Center, 973 F.2d at 1087. However, the Court limited its holding in Atlantic Business, noting that in Atlantic, the offending landlord had changed the locks on the debtor's radio station *two times*, even after the bankruptcy court ordered him not to. Id. at 1087-88. However, while there was no question that the

defendant's actions in <u>University Medical Center</u> were intentional, the Court held that the defendant had not willfully violated the stay, not merely because he had acted in a good faith belief that the stay did not apply, but because there was persuasive legal authority supporting his position:

> Here, however, the actions of the Secretary were neither in defiance of a court order nor were they contrary to certain contemporaneous interpretations of sections 362 and 365. The Secretary believed in "good faith" that he was not violating the stay. This of course is not sufficient under *Atlantic Business* to escape liability under section 362(h). However, the Secretary also had persuasive legal authority which supported his position. For this reason we conclude that the withholding by HHS did not fall within the parameters of "willfulness" as such actions have been described in *Atlantic Business* and that the Secretary should not be penalized for the position he took toward UMC after the filing of the petition.

<u>University Medical Center</u>, 973 F.2d at 1088.

In a recent decision, the Bankruptcy Court followed <u>University Medical Center</u> to find that a wife had proceeded with a good faith but incorrect belief that a prior order of the court had given her permission to proceed with a domestic relations case against her husband. <u>In re Cortellessa (Cortellessa v. Cortellessa)</u>, Bankr. No. 05-24258 REF, Adv. No. 06-2082 REF, 2006 WL 1997407, *5-*6 (Bankr. E.D. Pa. 2006) (Exhibit "D" hereto). Accordingly, the Court held that the wife's actions were not "willful" within the meaning of section 362(k) and declined to impose sanctions against her. <u>Id</u>. <u>See also generally</u> <u>Edisto Resources v. McConkey</u>, 158 B.R. 954, 958 (Bankr. D. Del. 1993) (where law was not well settled, punitive damages were not appropriate under section 362(k)).

Under <u>University Medical Center</u>, Mr. Cohen may not be sanctioned under section 3362(k). First, Mr. Cohen certainly did not intentionally violate the stay merely by speaking his mind. Moreover, Mr. Cohen has a good faith legal basis for his position that the stay does not apply. As discussed above, his actions do not fall squarely within any of the actions prohibited by section 362(a). Moreover, his statements in the Notification Letter—that Resort had filed for bankruptcy and that Mr. Cohen commenced a derivative action making certain allegations of misconduct—are true statements. Furthermore, Mr. Cohen is not even a creditor of Resort. This case certainly does not present a classic stay violation such as commencing a lawsuit or executing on a judgment against the debtor. At best, any alleged stay violation would have to be based on an extraordinarily liberal reading of section 362 along with a very narrow reading of what constitutes protected speech under the First Amendment. Because Mr. Cohen has a good faith legal basis for his position that his statements did not violate the automatic stay, his actions were not "willful" within the meaning of section 362(k) and sanctions should not be imposed.

**C.    Mr. Cohen's Letter to Members is True Speech Protected by the United States Constitution.[10]**

The Notification Letter is constitutionally protected free speech. While the Debtor may have been annoyed, embarrassed, insulted or even potentially injured by the Notification Letter, the First Amendment does not permit this Court to prohibit speech that is not directly contemptuous.

---

[10]    Respondents will not comment on whether the alleged statements concerning the Debtor's insurance underwriters are protected speech because Debtor has not made any specific allegation about what was allegedly said and to whom. Respondents reserve their right to challenge any claim based on such alleged statements on First Amendment or other grounds. In any event, Debtor has not identified any injury stemming from such statements.

The case of <u>In re National Service</u>, 742 F.2d 859 (5th Cir. 1984) is instructive. In <u>National Service</u>, an advertising agency that was a creditor of the debtor decided to add words to the debtor's advertising billboards that the debtor was in bankruptcy and may not be able to pay its bills, allegedly as a "public service announcement." The debtor sought an injunction under section 362(a) to prohibit the advertiser from continuing to run the advertisements. The bankruptcy court granted the injunction, finding that the advertisements were "false commercial speech" and violated section 362(a) because they represented no more than an attempt to "harass and intimidate the debtor." On appeal, district court affirmed. On further appeal, the Court of Appeals reversed. The Court first held that the speech was "pure speech" rather than commercial speech because "it is not being published by one whose profit interests are served by the view espoused." <u>National Service</u>, 742 F.2d at 862. The Court also found that the statements in the modified billboards were true—the debtor was in bankruptcy and couldn't pay its bills. The Court concluded that the Bankruptcy Court's order amounted to an impermissible prior restraint in violation of the First Amendment.

Like the defendant's speech in <u>National Service</u>, Cohen's Notification Letter transmitted certain true information to other members of Resort so that they could protect their own interests. As in <u>National Service</u>, all of the statements in the Notification Letter are true. The first statement that Resort filed for bankruptcy is a matter of public record and is plainly true. It is not without irony that Debtor complains that Mr. Cohen's letter was apparently the first notification of the bankruptcy sent to all equity holders in light of Debtor's failure to comply with its obligation to notify equity holders of the bankruptcy under Rule 2002(d).

The next statement, that Mr. Cohen brought a derivative action against Resort making certain allegations of breach of fiduciary duty against Mr. Cilione, is also true. Indeed, the derivative action is a matter of public record and anyone may obtain a copy of the complaint in that action, which in fact makes the allegations stated in the letter.

Of course, the Debtor contests these allegations—but one would naturally conclude that the allegations are contested if they resulted in a lawsuit. It should be stressed that the Notification Letter emphasizes that the statements in the derivative action are merely "*alleged*." The letter also discloses the fact that this Court denied Mr. Cohen's request for the appointment of a trustee. While it is true that this Court did not agree with Mr. Cohen, this Court denied that motion "without prejudice" such that its holding was not a final adjudication on the merits. Accordingly, there has been no finding by this Court or any other that the allegations in the derivative action are not true, only that they remain unproved.

Debtor further argues that the Notification Letter is "misleading" because it purportedly suggests that Mr. Cohen was appointed as a representative of the Debtor's members. The Debtor's argument finds no support in the letter itself. Nowhere does the letter state, imply or suggest that Mr. Cohen has been appointed by anyone to do anything. Rather, the letter merely states that the derivative action was brought on behalf of other members—a statement that is true as a matter of law. A derivative action is not brought on behalf of the named plaintiff, but on behalf of the company for the benefit of *all* other equity holders. See generally Wilderman v. Wilderman, 328 A.2d 456, 458 (Del. Ch. Ct. 1974) (holding that recovery in a derivative action should inure to the benefit of *all* stockholders). A derivative action by its very nature is not brought on

behalf of an individual equity holder. Moreover, for an equity holder to commence a derivative action, it is not necessary that a court "appoint" such holder as a representative of the company. Rather, the right to bring a derivative action is an inherent right of an equity holder under Delaware law. See, e.g., 18 Del. Code sec. 18-1001 et seq. (statute governing derivative actions brought by members of a limited liability company). In sum, the Notification Letter does not state or convey that Mr. Cohen was ever appointed to do anything. It merely states that he brought a derivative action not only for his own benefit, but for the benefit of other equity holders as well—a true statement as a legal matter.

Finally, the letter states that Mr. Cilione is considering changing the theme of the club to urban hip-hop and urges members to voice any objections they may have. Mr. Cohen learned of this information from Mr. Sagman who has been in touch with current and former employees of the club. Moreover, Debtor not only does not deny that it is considering changing the theme of the club, it goes so far to allege that the Notification Letter interferes with the Debtor's plan confirmation process. This is a truly remarkable position to take in light of the fact that the Plan says nothing about changing the theme or image of the club, one way or another.

Because the Notification Letter contained true statements made to other members so that these members could protect their own interests in the Debtor, the Notification Letter is protected speech under the First Amendment.

### D. Section 362(k) of the Bankruptcy Code Does not Apply to Debtors That are not "Individuals."

Respondents are cognizant of the Third Circuit Court of Appeal's statement in Atlantic Business and Community Corporation, 901 F.2d 325, 329 (3d Cir. 1990) that

"Although section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor." (citations omitted). Nevertheless, they would like to point out a few things about that decision.

First, the statement in <u>Atlantic</u> that section 365(k) applies in cases involving non-individual debtors is *obiter dicta* rather than *ratio decidendi* because that issue had not been brought before the court. Appellant in <u>Atlantic</u> challenged the imposition of sanctions for violation of the stay on the grounds that appellant's actions were allegedly not willful. See <u>Atlantic</u>, 901 F.2d at 328. Accordingly, the issue of whether a debtor that is not an individual may be awarded sanctions was simply not subject to the appeal and the Court's unnecessary statement on this subject was, hence, *dicta*. <u>See generally</u> <u>Brown v. Chaney</u>, 469 U.S. 1090, 1096 n.7 (1984) (noting that certain pronouncements of the court addressed issues that were not before the court and were therefore *dicta*).

*Dicta* pronouncements of the Court of Appeals, while entitled to great weight, are nevertheless not binding precedent. See <u>Chowdhury v. Reading Hospital and Medical Center</u>, 677 F.2d 317, 324 (3d Cir. 1982) (noting that while *dicta* pronouncements are entitled to weight, they "unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation.'") (citations omitted). Moreover, the Third Circuit's statement that section 362(k) applies even where the debtor is not an individual is not supported by any discussion or reasoning. Rather, the Court simply cites to the Fourth Circuit's decision in <u>Budget Service Co. v. Better Homes of Virginia</u>, 804 F.2d 289, 292 (4th Cir. 1986). That decision, in turn, without any citation to legislative history, dismisses the plain language of section 362(k), apparently as a drafting error. The Court supposes that Congress could not have meant for section

362(k) to apply only to individual debtors because that would somehow undermine the purposes behind section 362 in cases involving corporate debtors. However, both in section 362 and throughout the Code, Congress rationally distinguishes between remedies available to individuals and those available to corporate debtors. Moreover, Budget Service and Atlantic stand directly against every other Court of Appeals decision that has addressed the issue. See In re Just Brakes Corporate Systems, Inc., 108 F.3d 881, 885 (8th Cir. 1997); In re Chateaugay Corp., 920 F.2d 183, 186 (2nd Cir. 1990); Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539,1552 (11th Cir. 1996); In re Goodman, 991 F.2d 613, 619 (9th Cir. 1993).

Finally, Congressional enactment of the BAPCPA calls into question whether Atlantic or Budget Service remain in force. Congress substantially re-wrote the entire Bankruptcy Code in the BAPCPA. Few, if any, sections received more attention than section 362, which was more than doubled in length. Throughout the BAPCPA, and throughout section 362 in particular, Congress took pains to distinguish between those provisions that apply to *individual* debtors and those that apply to *all* debtors. These Code Sections are too numerous to list here, but in chapter 1 alone include Code sections 101(19A), 101(40A), 101(41A), 107(c), 109(h), 110(b) and 111. Indeed, section 362(k) itself was amended to provide a safe-harbor for creditors who acted with a good faith belief that new code section 362(h) applies—a section that by its terms applies only to "individual" debtors. Thus the BAPCPA invalidated those decisions that somehow viewed Congress' use of the word "individual" in section 365(k) as a drafting error.

### E.    Contempt Sanctions are Not Warranted

Court have generally recognized that contempt sanctions may be imposed for violation of the automatic stay. E.g. In re Goodman, 991 F.2d at 619. However, in the context of violating the stay, the standard for civil contempt is typically higher than the standard for the imposition of damages under 362(k). A finding of civil contempt for a stay violation generally must be supported by evidence that the actor undertook action which he knew, or at least should have known, would violate the automatic stay. Id. Here, Respondents did not knowingly violate the stay. Indeed, Mr. Cohen had no inkling that his merely writing a letter describing certain true facts could be a stay violation. Similarly, the alleged communications to the Debtor's insurers cannot be deemed to be an intentional stay violation. Accordingly, there is no support for an award of damages for civil contempt.

### CONCLUSION

The Court should see the Motion to Enforce Stay for what it is—an effort by Debtor to prejudice the Court against Respondents so that Respondents' motion to compel production of documents would be denied. Debtor has long known about these alleged stay violations—indeed, the filing of the Fee Motion and the alleged statements to the insurance underwriters were specifically raised at the hearing on the motion to appoint a trustee. It was only when Respondents threatened to file their motion to compel production of documents that the Debtor suddenly seemed so concerned about these alleged stay violations. As noted above, while the filing of the Motion for Fees after the Petition Date was a technical stay violation, it did not injure the Debtor. As for Mr. Cohen's unspecified statements concerning insurance and his letter to other members,

neither of these actions constitute efforts to collect a debt or to control or possess estate property, and cannot be stay violations as a matter of law. Moreover, such statements are protected speech under the first amendment and were communicated with the good faith belief that the stay did not apply. For all of these reasons, the Motion should be denied in all respects.

DATED: December 13, 2006

Christopher D. Loizides (No. 3968)
Michael J. Joyce (No. 4563)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:        loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance Designers of Maryland, Inc.*

# EXHIBIT A

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA.
CIVIL DIVISION.

CASE NO:  502005CA011398XXXXMB AG

INSURANCE DESIGNERS OF MARYLAND,
INC., a foreign corporation,

      Plaintiff,

v.

RESORT OF PALM BEACH, LLC, a
Florida limited liability company,
FRANK CILIONE, and SHAMIN ABAS,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTS I, II, AND III OF THE COMPLAINT PURSUANT TO RULE 1.510 FLA. R.CIV.P.

**THIS CAUSE** having come before the Court upon Plaintiff's Motion for Summary Judgment With Respect to Counts I, II and III of the Complaint Pursuant to Rule 1.510, Fla.R.Civ.P., and the Court having heard argument of counsel and having been duly advised in the premises, it is hereby

    **ORDERED and ADJUDGED** that Plaintiff's Motion is GRANTED.

    Plaintiff is entitled to attorney's fees and costs in amounts to be determined on further hearing.

    **DONE and ORDERED** at West Palm Beach, Palm Beach County, Florida, this _10_ day of _____July_____, 2006.

                                JOHN J. HOY, Circuit Judge

Copies to:
Jeffrey M. Garber, Esq., Boose Casey Ciklin, et al., 515 N. Flagler Drive, 18th Floor, West Palm Beach, FL 33401
Robert W. Murphy, Esq., 1212 S.E. 2nd Avenue, Fort Lauderdale, FL 33316

EXHIBIT

A

JUL

# EXHIBIT B

Baker Hostetler

Baker&Hostetler LLP

666 Fifth Avenue
New York, NY 10103-0001

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Douglas E. Spelfogel
direct dial: 212.589.4280
dspelfogel@bakerlaw.com

August 17, 2006

**Via Facsimile and Regular Mail**

Patrick J. Casey, Esq.
Boose Casey Ciklin Lubitz
Martens McBane & O'Connell
515 N. Flagler Drive - 18th Floor
West Palm Beach, FL 33401

Dear Mr. Casey:

We are bankruptcy Counsel for Resort of Palm Beach LLC ("Resort"), which filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 31, 2006. Pursuant to Section 362 of the Bankruptcy Code, all actions to enforce and/or collect upon any claims, suits, or other judicial process are automatically stayed. Continuation of any actions against Resort or to otherwise adjudicate claims in which Resort is a party are void and subject the violating party to sanctions to the extent that any such enforcement activity is deemed willful.

A copy of the notice of commencement of case is attached for your convenience. Based upon the foregoing, demand is hereby made for you to immediately withdraw your motion for attorney's fees date filed on or about August 9, 2006 in contravention of the bankruptcy stay and so notify the court of the filing.

Your prompt attention to this matter is anticipated.

Thank you,

Douglas E. Spelfogel

cc:    Doug Hirsch, Esq.
       Robert Murphy, Esq..
       Frank Cilione, Managing Member

# EXHIBIT C

October 18, 2006

Mr. Greg Calvino
220 W. 71st Street, #83
New York, NY 10023

RE:   *Resort of Palm Beach, LLC*
      *Bankruptcy*                         *Case No.: 06-10798-KG*

Dear Mr. Calvino:

I write this letter to you, as a fellow Member of and investor in Resort of Palm Beach, LLC, which operates a nightclub under the name "Resort" in West Palm Beach, Florida. As you may recall, you have invested in Resort (formerly NV of Palm Beach) at some time in the past. I obtained your name and address from a list Resort has filed.

On July 31, 2006, Resort of Palm Beach, LLC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"). The bankruptcy filings asserted that hurricanes, lawsuits and disputes with Resort's Landlord; among other things, necessitated filing for bankruptcy. The bankruptcy proceeding is ongoing in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (Case No. 06-10798-KG). Your name can be placed on the Service List if you file a request for notice with the Court.

Prior to the bankruptcy filing, information had been brought to my attention by several former employees of Resort about financial and operational issues involving Mr. Frank Cilione, who owns and controls the entity FACT Holdings Resort, LLC, the Manager of Resort. Because of such concerns, I took (at my expense) legal action derivatively on behalf of all equity holders, against FACT Holdings Resort, LLC and Frank Cilione in the United States District Court for the Southern District of New York (Case No. 06-CV-1139). The suit <u>alleged</u> among other things, that:

1.    Cilione siphoned Resort funds for personal use;
2.    Cilione used Resort's cash, liquor and employees to support unrelated business operations;
3.    Cilione failed to properly pay employee wages and taxes;
4.    Cilione failed to make distributions to Members; and
5.    Cilione failed to make required reports to Members.

The bankruptcy filing in July 2006 put a "stay" on the New York derivative suit. I recently requested permission from the bankruptcy court to continue that suit, but such permission was not granted for the time being. We hope to be able to pursue these claims in the future, subject to the permission of the Bankruptcy Court, and to have all allegations against Mr. Cilione fully investigated and dealt with. In that regard, we also requested that the Court appoint a Trustee to oversee Resort's activities, but the Court also denied that request for the time being.

In order to protect your rights, you may want to consider doing one or more of the following:

1.    Insist that all Members be fully informed of what is happening with Resort. Contact Mr. Cilione and demand financial and operational information.

2.    Object to any club operational changes that you believe are wrong. I understand that the club may be changing its theme to "urban hip-hop". Tell Mr. Cilione that is not the upscale nightclub you invested in.

I am also providing you with Mr. Cilione's last-known contact information along with the address for the bankruptcy court.

Frank Cilione                               Frank Cilione
Resort of Palm Beach, LLC                   Resort of Palm Beach, LLC
700 South Rosemary Avenue                   651 Okeechobee Boulevard, Suite 507
West Palm Beach, FL  33401                  West Palm Beach, FL  33401

United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE  19801
(302) 252-2900

Sincerely,

Jeffrey B. Cohen
300 Redland Court, Suite 105
Owings Mills, MD  21117
(410) 356-4020

# EXHIBIT D

Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
**(Cite as: Slip Copy)**

In re CortellessaBkrtcy.E.D.Pa.,2006.Only the
Westlaw citation is currently available.
United States Bankruptcy Court,E.D. Pennsylvania.
In re: Gregory P. CORTELLESSA, Debtor
Gregory P. Cortellessa, Plaintiff
v.
Lee Cortellessa, Defendant.
**Bankruptcy No. 05-24258 REF.**
**Adversary No. 06-2082 REF.**

June 9, 2006.

*ORDER*
FEHLING, Bankruptcy J.
*1 AND NOW, this 9th day of June, 2006, upon my
consideration of Wife's Motion for Summary
Judgment (all capitalized terms in this Order shall
have the meaning attributed to them in the
accompanying Memorandum Opinion), the parties'
agreement that no disputed material facts exist, my
independent finding that no disputed material facts
exist, the parties' agreement to submit this matter to
the Court in the present procedural status (i.e., Wife
has filed no answer to the complaint), as well as the
entire file in the above-captioned matter:

IT IS HEREBY ORDERED that the Wife's Motion
for Summary Judgment is denied in part (insofar as I
rule that the September 27 Order did not permit Wife
to initiate and prosecute the Special Relief Petition in
state court) and is granted in part (insofar as I rule
that Wife and her counsel are not subject to the
imposition of sanctions).

IT IS FURTHER ORDERED, based upon the
foregoing Memorandum Opinion, that the domestic
relations litigation proceeding in the Berks County
Court of Common Pleas, as it relates to Wife's efforts
through the Special Relief Petition to impose a
constructive trust upon and divest liens on the Former
Marital Residence, now in the sole name of Husband,
is prohibited by the automatic stay of Section
362(a)(3), 11 U.S.C. Section 362(a)(3), which was
not modified by the September 27 Order, which
allowed the state court domestic litigation to go
forward.

IT IS FURTHER ORDERED, based upon the
foregoing Memorandum Opinion that the request for

sanctions by Husband against Wife is denied and
dismissed.

IT IS FURTHER ORDERED that this adversary
proceeding be closed upon the entry of this Order.

*MEMORANDUM OPINION INTERPRETING THE
SEPTEMBER 27, 2005, ORDER OF THIS COURT
GRANTING RELIEF FROM THE AUTOMATIC
STAY OF SECTION 362*

*I. Background and Facts*

This matter involves the interface of Pennsylvania
state domestic relations law with the federal
bankruptcy laws. Plaintiff is Gregory P. Cortellessa
("Husband") and defendant is Lee Cortellessa
("Wife"), who initiated divorce proceedings against
Husband on March 21, 2002. Husband and Wife
jointly transferred their interest in the marital
residence at 15 Wyndam Hill Drive, Reading, Berks
County, Pennsylvania (the "Former Marital
Residence") to Husband in fee simple by deed dated
May 23, 2003 (the "Deed"); [FN1] In exchange,
Husband paid $15,000 to Wife and obtained a release
of Wife's liability for two debt obligations totaling
nearly $300,000. Husband filed his petition for
bankruptcy under Chapter 13 of the United States
Bankruptcy Code, Title 11 of the United States Code,
on July 21, 2005. On August 11, 2005, Wife moved
this Court for relief from the automatic stay (the
"Stay Relief Motion") to allow her to proceed with
her equitable distribution litigation against Husband
in the Berks County, Pennsylvania Court of Common
Pleas.[FN2] Specifically, Paragraph 9 of the Stay Relief
Motion avers: "The parties are prepared to proceed
with equitable distribution and have scheduled a
hearing before the Divorce Master on October 12 and
19, 2005." The prayer for relief in the Stay Relief
Motion prays for an order granting relief from the
stay "to proceed with divorce, custody and support
litigation" in the Berks County Court, without
reference to specific sub-sections of Section 362(a).

> FN1. The Deed is Stipulated Exhibit No. 5.
> The Stipulated Exhibits are Document
> Number 20 on the docket of this adversary
> proceeding. The Stipulated Exhibits and all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
**(Cite as: Slip Copy)**

documents on the dockets of both the main case and this adversary proceeding are available to me by my taking judicial notice of the documents on the docket of a case pending before me. *See In re Scholl,* No. 97-32805DWS, p. 2, n. 1 (Bankr.E.D.Pa. Aug. 26, 1998), in which Chief Judge Sigmund took judicial notice of the contents of documents on the docket, citing *Nantucket Investors II v. California Federal Bank (In re Indian Palms Assoc., Ltd.),* 61 F.3d 197, 205 (3d Cir.1995).

FN2. Wife's Motion for Relief from the Automatic Stay (the "Stay Relief Motion") is Document Number 11 on the docket of Husband's Chapter 13 case.

*2 At the hearing on the Stay Relief Motion on September 27, 2005, a brief colloquy (the "Colloquy") occurred among counsel for Husband, counsel for Wife, and Honorable Thomas M. Twardowski (my predecessor in this Reading Division of the Bankruptcy Court).[FN3] Following the Colloquy, Judge Twardowski signed an order with which the parties ultimately agreed (the "September 27 Order"). [FN4] The operative language of the September 27 Order follows:

FN3. The transcript of the Colloquy (the "Colloquy Transcript") among counsel and Judge Twardowski is Document Number 50 on the docket of Husband's Chapter 13 bankruptcy case.

FN4. The September 27 Order is Document Number 24 on the docket of Husband's Chapter 13 bankruptcy case.

IT IS HEREBY ORDERED that Movant's Petition is GRANTED and Movant, Lee Cortellessa, is granted relief from the Stay so that Lee Cortellessa and Debtor may proceed with their domestic litigation in the Court of Common Pleas, Berks County, Pennsylvania in the following matters and docket numbers:
Divorce-Docket No. 02-3192
Custody-Docket No. 02-12085
Support-Docket No. 02-081000, PACSES No. 140104330.

Three and a half months into the resumed state court proceeding (on January 10, 2006), Wife filed her

Amended and Fully Restated Petition for Special Relief (the "Special Relief Petition"),[FN5] through which Wife sought to impose a constructive trust on the Former Marital Residence, now titled solely in Husband's name and property of Husband's Chapter 13 estate, and to divest certain mortgage and judgment liens that encumber the Former Marital Residence. Husband returned to this Court [FN6] with his complaint in this adversary proceeding, filed on February 15, 2006, seeking a determination that Wife had violated the automatic stay by initiating the constructive trust action. Husband filed an amended complaint on March 10, 2006. Husband claims that the Special Relief Petition is entirely outside the scope of the relief granted by the September 27 Order. Husband had also asserted the same argument in the state court action and Honorable Scott E. Lash ordered, on February 28, 2006, that this Court should determine the scope and limits of the September 27 Order.[FN7] Of particular importance is the following excerpt from Judge Lash's order:

FN5. The Special Relief Petition is Stipulated Exhibit No. 11.

FN6. Judge Twardowski had expressly refused to relinquish jurisdiction to allow the parties to "argue positions in the future ." Colloquy Transcript, page 8, lines 8-16.

FN7. Judge Lash's February 28, 2006, Order deferring to this Court further consideration of the September 27 Order is Stipulated Exhibit No. 13.

[I]t further appearing to this Count that interpretation of the automatic stay is within the sole purview of the United States Bankruptcy Court, it is hereby ORDERED that disposition of the Petition of Plaintiff, Lee C. Cortellessa, for Special Relief is deferred, pending a determination by the United States Bankruptcy Court on whether the issues raised in the Petition for Special Relief are encompassed by the relief from the automatic stay entered on September 27, 2005, or if not, whether the Bankruptcy Court would extend the scope of the stay to allow this Court to enter a disposition on the Petition for Special Relief.

I appreciate Judge Lash's deferring to this Court's interpretation of the Section 362 automatic stay and the September 27 Order of this Court (although not of the undersigned) relating to Section 362. Just as this Court had and has the legal power and jurisdiction to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 3
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
(Cite as: Slip Copy)

determine matters of peculiarly state law, such as equitable distribution under Pennsylvania's Divorce Code, 23 Pa.C.S. § § 3101 et seq.,$^{FN8}$ so the state court has the power and concurrent jurisdiction to determine certain matters arising specifically under the Bankruptcy Code, such as the automatic stay of Section 362. In re Steward, 338 B.R. 654, 658 (Bankr.D.N.J.2006) (citing In re Singleton, 330 B.R. 533, 538-39 (6th Cir. B.A.P.1999)). Furthermore, state courts have the power to interpret both Section 362 and bankruptcy court orders interpreting it. Graziani v. Randolph, 887 A.2d 1244, 1249 (Pa.Super.2005); Commonwealth, DER. v. Ingram, 658 A.2d 435, 437-38 (Pa.Commw.Ct.1995). As stated above, bankruptcy courts have the power to interpret state domestic relations law, particularly in matters of property distribution. In re Wilson, 85 B.R. 722, 727-28 (Bankr.E.D.Pa.1988). But, as Judge Twardowski deferred to the state court's expertise in the realm of equitable distribution litigation by granting relief from the automatic stay to allow the parties to proceed in state court, so too did Judge Lash defer ruling on the relief from automatic stay issue arising under Section 362 of the Bankruptcy Code, referring the parties to this Court.

> FN8. The statutory basis for equitable distribution is found at 23 Pa.C.S. § § 3501, et seq.

*3 On March 10, 2006, Husband requested that I expedite this adversary proceeding and I ordered a hearing to be set for April 4, 2006. Prior to April 4, Wife filed her Amended Motion To Dismiss/Withdraw Document and for Summary Judgment,$^{FN9}$ to which Husband responded.$^{FN10}$ At the April 4, 2006, hearing and argument,$^{FN11}$ I considered the parties' agreement that they would submit a stipulated set of evidentiary exhibits for my consideration. Neither party felt the need to offer live testimony at the hearing, agreeing that the exhibits would accurately set forth all necessary information for me to make my determination.$^{FN12}$ On April 4, the parties presented extensive oral argument, answering and addressing many questions that I raised. Both parties filed their briefs on April 28, 2006. I regard this matter as now before me on Wife's motion for summary judgment, acknowledging counsels' statements that no disputed material facts face me as well as finding independently that no disputed material facts exist.$^{FN13}$ This matter is now ripe for my determination.

> FN9. Wife's Amended Motion To Dismiss/Withdraw Document and for Summary Judgment, filed March 27, 2006, is Document Number 11 on the docket of Husband's Chapter 13 bankruptcy case.

> FN10. Husband's Response to Amended Motion To Dismiss and for Summary Judgment, filed March 31, 2006, is Document Number 12 on the docket of Husband's Chapter 13 bankruptcy case.

> FN11. The transcript of the argument (the "Argument Transcript") among counsel and this Court is Document Number 23 on the docket of this adversary proceeding.

> FN12. Additional documents have been included in the Stipulated Exhibits, through my order of May 17, 2006 (Document 24 on the docket of this adversary proceeding), and through the filing of an additional exhibit on May 23, 2006 (Document 27 on the docket of this adversary proceeding).

> FN13. By bench order on April 4, 2006, I denied Wife's motion to dismiss for failure to state a claim for which relief might be granted because the record is clear that Husband's action is based upon Wife's alleged violation of the Section 362 automatic stay and therefore certainly states a claim for which relief might be granted. Argument Transcript, page 29, lines 21-24. Wife also argued that, because the parties raised the issue of the interpretation of Section 362 and the September 27 Order before the state court (which has not ruled on the issue), the doctrine of issue preclusion (formerly know as collateral estoppel) bars me from hearing this matter. I rejected this argument on April 4, 2006, see Argument Transcript, page 30, lines 8-14, and I reject it here. Wife is incorrect for two reasons. First, Judge Lash specifically declined to rule on Section 362 and the September 27 Order, referring them to me for consideration. See p. 3 and fn. 7, above. Second, Judge Lash never ruled on the stay relief issue and the cases are quite clear that one of the requisite elements of an effective issue preclusion argument is a showing of an actual adjudication of the issue claimed to be precluded. See Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir.1995); Rashid v.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 4
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
**(Cite as: Slip Copy)**

*United States (In re Rashid ), No. Civ. A.*
*01-CV-2197, 2002 WL 15939, at *3*
*(E.D.Pa. Jan. 8, 2002).*

## II. SUMMARY

Based upon the discussion below, I have determined that Wife's proceeding to impose a constructive trust and avoid the liens on the Former Marital Residence was not included in the relief from the automatic stay granted by Judge Twardowski in his September 27 Order and it was inappropriately initiated and prosecuted in the state court. Despite that finding, however, I will deny Husband's request for sanctions because Wife's counsel reasonably believed that she had been granted permission to pursue the relief that she was seeking in state court.

## III. DISCUSSION

### A. Extent of the Relief Granted by the September 27 Order.

I do not believe that the September 27 Order granted relief from the automatic stay of Section 362 to permit Wife to initiate and prosecute the constructive trust relief and avoidance of liens sought in the Special Relief Petition as part of the equitable distribution proceeding in the Berks County Court.

Husband argues that the Stay Relief Motion, the Colloquy, and the September 27 Order are based on Section 362(a)(1), which prohibits continuation of judicial proceedings to establish or recover a claim, 11 U.S.C. § 362(a)(1), but that nothing permitted any acts to obtain or exercise control over property of the estate, which is stayed by Section 362(a)(3), 11 U.S.C. § 362(a)(3). Husband argues therefore that Wife's initiation and prosecution of the Special Relief Petition violates Section 362(a)(3), because it constitutes an action against the Former Marital Residence, which is now clearly property of Husband's Chapter 13 estate. I reject Husband's argument insofar as it purports to point to any express distinction in the record between the two sub-sections of Section 362(a). My review of the Stay Relief Motion and the Colloquy failed to find any express reference limiting the scope of the September 27 Order to Section 362(a)(1). No differentiation between particular sub-sections of Section 362(a) is found in the record.

*4 Although no express differentiation between sub-

sections of Section 362(a) existed in either the Stay Relief Motion, the Colloquy, or the September 27 Order, I believe that such differentiation impliedly existed. In the Colloquy, Wife's counsel referred to Wife's need to return to state court as "not a complex case" and his comments to the Court in the Colloquy centered exclusively on Wife's need to proceed with "very few issues involved in the equitable distribution matter." Colloquy Transcript, page 4, lines 4-6. Judge Twardowski noted that the matter should be sent back "to state court for the equitable distribution issues to be resolved." Colloquy Transcript, page 5, lines 16 & 17. Wife's counsel declared their intent to proceed "with matters that are ripe to do so in state court." Colloquy Transcript, page 5, lines 19 & 20. As mentioned above, Paragraph 9 of Wife's Stay Relief Motion clearly anticipates that the entire equitable distribution litigation would be completed before the Divorce Master by mid-October 2005. Wife's counsel made no reference to any other litigation that was or might be necessary and nothing was said about any need to initiate and prosecute constructive trust or avoidance of liens litigation against property of the Chapter 13 estate.

These cited comments and the entire Colloquy appear to limit the scope of the anticipated domestic litigation to a garden-variety determination of equitable distribution. Clearly, at least to my reading, the Special Relief Petition was not ripe for determination in the Berks County Court because the idea of the constructive trust and lien avoidance litigation had apparently not yet occurred to Wife's counsel.

If straying beyond standard equitable distribution was, however, within the contemplation of either counsel, they disguised it completely, making no reference to it whatsoever. If it was within the contemplation of Judge Twardowski, it was not memorialized in any way in his September 27 Order or his comments in the Colloquy. The discussion was exclusively related to determining the amount of Wife's claim against Husband in the nature of straight-forward equitable distribution and did not get into any description of carving up assets or avoiding liens to provide for payment to Wife. But in his argument on April 4, counsel for Wife acknowledged that the Special Relief Petition is primarily intended for collection efforts rather than for determining equitable distribution. Argument Transcript, page 48, line 23, through page 50, line 12. Therefore, I regard the extraordinary relief sought through the Special Relief Petition as being wholly outside the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
(Cite as: Slip Copy)

Page 5

contemplation of the parties to the Colloquy on September 27, 2005, and therefore outside the permission granted in the September 27 Order. Judge Twardowski anticipated that the parties might return to him in the future to address "issues of ultimate allowance of claims, [and] ultimate distribution schemes under the Bankruptcy Code...." Colloquy Transcript, page 3, lines 24 & 25.

*5 I conclude, although Section 362(a)(3) is not expressly identified in either the Stay Relief Motion, the Colloquy, or the September 27 Order, that the Special Relief Petition was initiated contrary to the restrictions and prohibitions of Section 362(a)(3) of the Bankruptcy Code and is not authorized by the September 27 Order.

My determination that the Special Relief Petition was beyond the contemplation of the parties on September 27, 2005, and was not addressed by the September 27 Order, begs the question, of course, of what now to do with the Special Relief Petition. Do I somehow keep it before me for determination of the disposition of what is clearly property of the Chapter 13 estate or allow the parties to pursue the litigation in state court? [FN14] This appears to be the true lynchpin of this dispute, raising a difficult intersection of the two bodies of law-Pennsylvania domestic relations law and federal bankruptcy law-with no specific precedent that might provide me with guidance. [FN15] Nevertheless, judicial restraint dictates that I limit my analysis and decision to the two narrow issues expressly presented by the parties in their pleadings before me, which issues are limited to (1) a determination whether the September 27 Order did or did not permit Wife to proceed with the Special Relief Petition and (2) a request for a damages award in the event that the September 27 Order did not grant such permission. I have described my conclusion on the first issue above and will now look to the second issue.

> FN14. In his February 28 order, found at page 3, above, Judge Lash suggested that I might consider extending the scope of the relief from the automatic stay to allow him to address the Special Relief Petition, but neither party has requested that I do so.

> FN15. I do not believe that any of the decisions referred to me by either counsel address staying or permitting domestic relations law litigation of the nature faced in this matter, to wit, an apparently ancillary

petition seeking a constructive trust and avoidance of liens, dealing directly (and adversely) with the interests of a debtor and secured creditors in property of a Chapter 13 estate. The cases of Scholl v. Scholl, 234 B.R. 636 (Bankr.E.D.Pa.1999), and Fidelity Bank v. Carrol, 652 A.2d 296 (Pa.1994), relied upon heavily by Wife, are inapposite. The decision that provides more guidance for me is In re Wilson,supra, 85 B.R. 722 (Bankr.E.D.Pa.1988), discussed briefly above.

*B. Neither Wife Nor Wife's Counsel Should Be Sanctioned for Proceeding with the Special Relief Petition Without Specific Relief from the Automatic Stay To Do So.*

Finding as I do that the September 27 Order did not grant Wife relief from the automatic stay of Section 362 to initiate and prosecute the Special Relief Petition, I turn next to Husband's well-pleaded demand for actual and punitive damages. Paragraph 16 of the Amended Complaint [FN16] explains in sufficient detail the nature of the actual damages and losses that Husband has experienced through Wife's presentation and prosecution of the Special Relief Petition. He has alleged the following damages: (1.) Attorneys' fees and costs; (2.) time (and therefore money) lost from his business as a dentist; (3.) the attorneys' fees and costs incurred by his lenders, who have been forced to put substantial time and effort into the defense of the liens securing their loans; and (4.) punitive damages for Wife's purported willful conduct. [FN17]

> FN16. Document Number 4 on the docket of the adversary proceeding.

> FN17. If I were to rule for the Husband on the issue of damages, I would be obliged to conduct a factual hearing on the specifics of the damages sought by Husband, but his pleading identifies the nature of the damages sufficiently for the purpose of this Memorandum Opinion.

Section 362(k) provides the statutory support for Husband's request for damages as follows:
Except as provided in paragraph (2) [an exception not applicable here], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)
(Cite as: Slip Copy)

Page 6

may recover punitive damages.

11 U.S.C. § 362(k)(1). Such damages may be awarded solely upon the "willful violation" of Section 362. I do not believe that a "willful violation" of the stay arises by pursuing litigation when the offending party believes that the Section 362 automatic stay has been modified specifically to permit the litigation. The Third Circuit Court of Appeals accepted a definition of "willful violation" established by the Ninth Circuit Court, which definition requires only that the offending party knew of the automatic stay and intended to do what it did by acting intentionally. *Cuffee v. Atlantic Bus. and Cmty. Dev. Corp. (In re Atlantic Bus. and Cmty. Dev. Corp.), 901 F.2d 325, 329 (3d Cir.1990) citing Goichman v. Bloom (In re Bloom ), 875 F.2d 224, 227 (9th Cir.1989).* The Court in *Cuffee* further accepted the *Bloom* position that the offending party's good faith is not relevant. The *Cuffee* Court then went on to examine, and seemingly accept, certain bankruptcy courts' construction of "willful violation" as an intentional or deliberate act done with knowledge that the act is in violation of the stay. *Id.* The latter definition of "willful violation" was adopted very recently in this District from the *Cuffee* decision in *In re Jester, No. 05-32185DWS, 2006 WL 1495041, at *5 (Bankr.E.D. Pa. April 12, 2006).* Under either of these definitions, I believe that Wife's actions were undertaken with a legitimate belief that no automatic stay existed to prevent the Special Relief Petition. Wife reasonably thought that the stay did not exist because, she believed, it had been modified specifically to allow all domestic litigation of whatever nature.

**\*6** Another line of decisions defining "willful violation" in the context of Section 362(k) is similar. If the offending party has "persuasive legal authority" to support the actions, no damages will be awarded for violating the automatic stay of Section 362. *University Medical Center v. Sullivan (In re University Medical Center ), 973 F.2d 1065, 1088 (3d Cir.1992); Montgomery Ward, LLC v. Wiseknit Factory, Ltd. (In re Montgomery Ward, LLC ), 292 B.R. 49, 57 (Bankr.D.Del.2003).* I believe that Wife's persuasive legal authority in this matter was the text of the September 27 Order, which, on its face, supported the initiation and prosecution of the Special Relief Petition.

The absence of any reference to sub-sections (a)(1) or (a)(3) of Section 362 in the September 27 Order and the Colloquy could reasonably be construed to permit any and all litigation in the state court in any way related to the pending domestic relation cases. The September 27 Order expressly permitted Wife to proceed with her "domestic litigation," which could be (and apparently was) construed by Wife and her counsel to permit the Special Relief Petition as part and parcel of the pending equitable distribution litigation. I find, therefore, that Wife and Wife's counsel had persuasive authority to support their position that initiation and prosecution of the Special Relief Petition was permitted under the September 27 Order. Neither Wife nor Wife's counsel has willfully violated the automatic stay of Section 362 through the Special Relief Petition and I will deny and dismiss Husband's demands for damages under Section 362(k) to be awarded to him.

An appropriate Order will follow granting Husband's prayer for a limiting interpretation of the September 27 Order, but denying Husband's request for an award of damages.

Bkrtcy.E.D.Pa.,2006.
In re Cortellessa
Slip Copy, 2006 WL 1997407 (Bkrtcy.E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 06-10798 (KG) |
| | ) | |
| RESORT OF PALM BEACH, LLC., | ) | **HEARING DATE: DECEMBER 20, 2006 AT 2:00 P.M. (EST)** |
| | ) | |
| Debtor. | ) | **OBJECTION DEADLINE: DECEMBER 13, 2006 AT 4:00 P.M. (EST)** |
| | ) | |
| | ) | **RE: DOCKET NO. 176** |

---

**ORDER DENYING THE DEBTOR'S MOTION**
**FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN**
**AND INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT**
**FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF**

Upon consideration of the above-referenced motion (the "Motion") and the

response thereto of Jeffrey B. Cohen and Insurance Designers of Maryland, Inc.; and

upon finding that there is no basis for the Motion; it is hereby ORDERED that the Motion

is DENIED.

DATED: _____

                                        _____
                                        Honorable Kevin Gross
                                        United States Bankruptcy Court Judge

061213101718.doc

# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RESORT OF PALM BEACH, LLC, | : | Case No. 06-10798 (KG) |
| | : | |
| Debtor. | : | **Re: Docket Nos. 174, 175, 176** |
| | : | |

**STIPULATION ADJOURNING MOTION BY RESORT OF PALM BEACH FOR
CONTEMPT AND MOTIONS BY JEFFREY B. COHEN
AND INSURANCE DESIGNERS OF MARYLAND, INC.
TO DISMISS AND FOR RULE 2004 EXAMINATION AND AGREEING TO
RESTRAINING ORDER**

Whereas Resort of Palm Beach, LLC ("Resort"), the above-captioned debtor and

debtor-in-possession, filed a motion dated on or about December 1, 2006 against Jeffrey

B. Cohen ("Cohen") and Insurance Designers of Maryland, Inc. ("IDM") (collectively

"Cohen and IDM, the "Cohen Parties") to hold them in contempt for violation of the

automatic stay (the "Contempt Motion"), and the Cohen Parties having filed opposition

to the Contempt Motion; and

Whereas the Cohen Parties having filed motions to dismiss (the "Dismissal

Motion") and for entry of an order directing production of certain information under

Federal Rule of Bankruptcy Procedure ("FRBP") 2004 ("2004 Motion") (collectively, the

Dismissal Motion and 2004 Motion, the "Cohen Motions") on or about December 1,

2006, and Resort having filed opposition to the Cohen Motions; and

Whereas, the hearings on the Contempt Motion and Cohen Motions have been

scheduled for hearing on December 20, 2006; and the Cohen Parties having informed

Resort that Cohen was unavailable to attend the scheduled hearing, and after consultation

between the parties, Resort and the Cohen Parties have agreed to as follows:

061219201622

1.  The Cohen Parties agree and consent to the within stipulation (the "Stipulation") and entry of the annexed restraining order prohibiting the Cohen Parties individually and their respective agents or persons acting on their behalf from deliberately taking actions that materially interfere with Resort's business or reorganization and/or communicating (whether orally or in writing) with anyone in any manner whatsoever regarding Resort's business and/or reorganization except as expressly provided below.

2.  Notwithstanding the foregoing, outside counsel or in-house counsel to the Cohen Parties may communicate with any other attorney concerning the Resort bankruptcy case, including any staff member working for such attorney, and may communicate with the office of the United States Trustee and the Court in accordance with any applicable procedural rules.  Internal communications by personnel within the respective parties' companies or communications between the parties and respective counsel are not subject to this Stipulation.

3.  Nothing herein shall affect the right of the Cohen Parties to file any appropriate papers or pleadings with the Bankruptcy Court and Resort's right to object.

4.  In response to any communication from anyone concerning Resort, the Cohen Parties are not required to respond to any such communication; however, if they do respond, they shall inform the party of this Stipulation and accompanying restraining order.

5.  The restraining order shall continue in full force and effect until the Bankruptcy Court or District Court renders a decision on the merits of the Contempt Motion.  A "decision on the merits" means a decision as to liability or injunctive relief,

2

whether or not appealed or appealable, and whether or not such decision includes a determination of damages.

6. The Cohen Motions shall be continued such that they will not be heard until the Bankruptcy Court's or District Court's decision on the merits of the Contempt Motion. Resort and the Cohen Parties agree to adjourn the hearing on the Contempt Motion and the Cohen Motions to the Bankruptcy Court's next omnibus date in the Resort case.

7. This Stipulation shall be and is without prejudice to all of the respective parties' rights, remedies and defenses and nothing contained herein is an admission of fault by either party. In addition, the Cohen Parties are not precluded from conducting discovery in the within bankruptcy case during the time the restraining order is in effect; however such discovery shall not be under FRBP 2004 or to obtain the information requested in the 2004 Motion, and without prejudice to Resort's right to object. This restriction under this Paragraph 7 shall terminate upon the expiration of the restraining order herein.

8. Cohen is not precluded from filing a motion to withdraw the reference or a motion for a stay of the Contempt Motion, subject to Resort's right to object. Notwithstanding the afore-referenced, in no event shall the Cohen Parties (or their agents) seek an order vacating or staying the within restraining order granted hereunder and such restraining order shall remain in full force and effect until such time as there has been a decision on the merits of the Contempt Motion. In addition, in the event of any stay of the Contempt Motion, the Cohen Parties expressly agree that the Cohen Motions shall similarly be stayed pending the decision on the Contempt Motion.

3

9. Undersigned counsel represent that they have authority to enter into this Stipulation and consent order on behalf of their respective clients. Counsel shall provide their respective client(s) with a copy of the entered restraining order and this Stipulation upon Court approval. This Stipulation may be signed in counterparts and by facsimile.

Agreed to this 20th day of
December, 2006

Insurance Designers of Maryland, Inc.
And Jeffrey Cohen

By: Christopher Loizides, Esq, as counsel
LOIZIDES & ASSOCIATES
1225 King Street
Suite 800
Wilmington, DE 19801
Phone: (302) 654-0248

Resort of Palm Beach LLC

By: Douglas E. Spelfogel,
as counsel
Baker & Hostetler LLP
666 Fifth Avenue
New York, New York 10103
Phone: (212) 589-4280

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RESORT OF PALM BEACH, LLC, | Case No. 06-10798 (KG) |
| Debtor. | Re: Docket Nos. 174, 175, 176 |

## ORDER APPROVING STIPULATION ADJOURNING MOTION BY RESORT OF PALM BEACH FOR CONTEMPT AND MOTIONS BY JEFFREY B. COHEN AND INSURANCE DESIGNERS OF MARYLAND, INC. TO DISMISS AND FOR RULE 2004 EXAMINATION AND GRANTING RESTRAINING ORDER

Upon consideration of the annexed stipulation (the "Stipulation") between Resort of Palm Beach, LLC ("Resort"), the above-captioned debtor and debtor-in-possession, and Jeffrey B. Cohen ("Cohen") and Insurance Designers of Maryland, Inc. ("IDM") (collectively Cohen and IDM, the "Cohen Parties") with respect to the motion by Resort to hold the Cohen Parties in Contempt and the motions by the Cohen Parties to dismiss and for production of documents under Federal Rule of Bankruptcy Procedure 2004; and no further notice having been required; and cause existing, it is hereby

ORDERED, ADJUDGED AND DECREED that:

1.      The Stipulation is approved and the Cohen Parties individually and their respective agents or persons acting on their behalf shall be prohibited from deliberately taking actions that materially interfere with Resort's business or reorganization and/or communicating (whether orally or in writing) with anyone in any manner whatsoever regarding Resort's business and/or reorganization except as expressly provided in the Stipulation, the terms and conditions of which are incorporated by reference in full.

Dated: December __20__, 2006

Honorable Kevin Gross
United States Bankruptcy Judge

061219201622

DOCKET NO. __213__

DATE __12/20/06__

# EXHIBIT E

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 3657096 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

C

Briefs and Other Related Documents

In re U.S.A. Floral Products, Inc.D.Del.,2005.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

In re: U.S.A. FLORAL PRODUCTS, INC., et al., Debtors.

Robert F. TROISIO, Plan Administrator pursuant to the Amended Joint Plan of Liquidation for the estate of USA Floral Products, Inc. and its affiliate debtors, Plaintiff,

v.

Robert POIRIER, Vincent W. Eades, Edward J. Mathias, Gustavo Moreno, and Jonathan Ledecky Defendants.

No. 01-1230 (MFW), ADV. 03-52514, Civ.A. 05-00039-KAJ.

July 1, 2005.

Theodore J. Tacconelli, Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Plaintiff.

Curtis A. Hehn, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

*1 Before me is a motion to withdraw the reference (Docket Item ["D.I."] 1; the "Motion") filed by Robert Poirier, Vincent W. Eades, Edward J. Mathias, Gustavo Moreno and Jonathan Ledecky (collectively, "Defendants"). Defendants' Motion requests that adversary proceeding number 03-52514 be withdrawn from the U.S. Bankruptcy Court for the District of Delaware, pursuant to 28 U.S.C. § 157(d), and further requests a waiver of the requirement that a contemporaneous motion be filed to determine whether the matter is core or non-core, as required under Bankruptcy Courts's Local Rule 5011-1. (D.I. 1 at 1.) Also before me is Defendants' request for oral argument on the Motion. (D.I.2.) For the reasons that follow, the Motion will be granted and the request for oral argument will be denied as moot.

On April 1, 2003, Robert F. Troisio, Plan Administrator pursuant to the Amended Joint Plan of Liquidation for the estate of USA Floral Products, Inc. and its affiliate debtors ("Plaintiff") commenced this action by filing a Complaint alleging, *inter alia*, breaches of fiduciary duty by Defendants in their capacity as officers and directors of the debtor (Count I), negligent misrepresentation (Count II), and waste of corporate assets (Count III). (D.I. 3 at 2.) On November 12, 2003, Plaintiff filed an amended complaint, amending counts I-III and adding claims asserting fraudulent conveyances (Counts IV and V.). (*Id.* at 2.) On January 12, 2004, Defendants filed a motion to dismiss count I, II, III and V. (D.I. 1 at 4.) On November 24, 2004, the Bankruptcy Court issued its memorandum opinion in which it granted dismissal of count V only. (*Id.*) On December 13, 2004, Defendants filed their Answer, in which they demanded a jury trial of all issues so triable. (*Id.*) On January 5, 2005, the present Motion (D.I.1.) was filed.

Plaintiff's sole argument in opposition to the Motion is the timeliness of the filing of the motion. (D.I. 3 at 3.) Plaintiff argues that Defendants failed to file at the "first reasonable opportunity" which arose on or about June 25, 2003, when the initial complaint was served. (*Id.*) Alternatively, Plaintiff argues that the court should limit the withdrawal of the reference to the trial portion only, leaving pre-trial and discovery matters under the administration of the bankruptcy judge. (*Id.* at 5.)

In determining whether to grant or deny a motion to withdraw the reference, "this Court will consider ... whether **withdrawal** would serve judicial economy, such as the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *NDEP Corp. V. Handl-It, Inc. (In re NDEP Corp.),* 203 B.R. 905, 913 (D.Del.1996). The statute permits **withdrawal** of the reference "on timely motion of a party." 28 U.S.C. § 157(d). "[T]imeliness of the motion for **withdrawal** of the reference is not defined in the statute and can be judged only in a relative sense." *Lowin v. Dayton Securities Associates (In re the Securities Group 1980),* 89 B.R. 196, 197 (M.D.Fla.1988). Therefore, **timeliness** "must be measured by the **stage** of the proceedings in the Bankruptcy Court." *Id.* A court is more likely to find the motion untimely as the proceeding becomes "more developed, complicated and involved." *United States v. Kaplan,* 146 B.R. 500, 504 (D.Mass.1992). However, this case is still at a procedurally early **stage**; no discovery has taken place and no initial trial conference has occurred or is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

currently scheduled. While Defendants had notice of the ground for the motion as early as June 2003, "it would have been imprudent to file ..." until the Bankruptcy Court denied Defendants' motion to dismiss. *See In re Sevko, Inc., 143 B.R. 114, 116 (N.D.Ill.1992).* Thus, given the lack of a specific time limit and the early **stage** of the proceedings, the motion was filed timely. *See Lars, Inc. v. Taber Partners (In re Lars, Inc.), 290 B.R. 467, 470 (D.P.R.2003).*

*2 Although Plaintiff asserts that all pretrial matters in this proceeding should be remanded to the Bankruptcy Court, Plaintiff provides no explanation in support of these contentions. (D.I. 3 at 5.) Further, remanding the matter to the Bankruptcy Court, or denying the Motion, would not promote uniformity in the bankruptcy administration, reduce forum shopping, foster the economical use of the parties resources, or expedite the bankruptcy process. On the contrary, it appears that considerations of judicial economy favor withdrawal. Because it is essentially conceded that Defendants are entitled to a jury trial, it will likely be more efficient for this court to manage the case through the pretrial process. *Cf. NDEP, 203 B.R. at 913* (quoting *Gumport v. Growth Fin. Corp. (In re Transcon Lines), 121 B.R. 837, 838 (C.D.Cal.1990)*) ("Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation.").

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to withdraw reference (D.I.1) is GRANTED and the reference of the above Adversary Proceeding Number 03-52514 is WITHDRAWN. IT IS FURTHER ORDERED that Defendants need not file a motion to determine whether matter is core or non-core. Defendants' request for oral argument is DENIED as moot.

D.Del.,2005.
In re U.S.A. Floral Products, Inc.
Not Reported in F.Supp.2d, 2005 WL 3657096 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00039 (Docket) (Jan. 25, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 06-10798 (KG) |
| RESORT OF PALM BEACH, LLC., | ) | |
| | ) | **Objection Deadline:** |
| Debtor. | ) | **Hearing Date:** |
| | ) | |
| | ) | Re: Docket No. _____ |

## ORDER GRANTING MOTION OF
## JEFFREY B. COHEN AND INSURANCE DESIGNERS
## OF MARYLAND, INC. TO WITHDRAW THE REFERENCE

Upon Jeffrey B. Cohen and Insurance Designers of Maryland, Inc.'s Motion to Withdraw the Reference (D.I. _____, the "Motion") being duly considered;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The reference of the Stay Motion, as defined in the Motion, is hereby withdrawn pursuant to 28 U.S.C. § 157(d).

DATED: _____

_____
Honorable
United States District Court Judge

070110151006.DOC

**TRANSMITTAL SHEET FOR WITHDRAWAL OF REFERENCE TO THE
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**Bankruptcy Case #:**                      06-10798
**District Court Civil Action#:**

**Deputy Clerk Transferring Case:**         Nancy L'Heureux

**Cause of Transmittal:**                   Motion to Withdraw the reference of Debtor's
                                            Motion for Entry of an Order Holding Jeffrey
                                            Cohen and Insurance Designers of Maryland, Inc. in
                                            Contempt for Violation of the Automatic Stay and
                                            for Related Relief

**Parties:**

    **Debtor:**_____Resort of Palm Beach, LLC
    **Debtor's Counsel:**                James C. Carignan

    **Movant(s):**                       Jeffrey B. Cohen and Insurance Designers of
                                            Maryland

    **Movant's Counsel**:                Christopher D. Loizides

                                            Loizides & Associates

revised: 10/20/03

T:\Transmittal of Withdraw of Reference.wpd