IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 06-10798 (KG) |
| RESORT OF PALM BEACH, LLC., | ) | |
| | ) | |
| Debtor. | ) | Re: Docket Nos. 176, 194, 234 and 276 |
| | ) | |

**REPLY IN SUPPORT OF THE MOTION OF
JEFFREY B. COHEN AND INSURANCE DESIGNERS OF MARYLAND,
INC. TO WITHDRAW THE REFERENCE OF DEBTOR'S MOTION
FOR ENTRY OF AN ORDER HOLDING JEFFREY COHEN AND
INSURANCE DESIGNERS OF MARYLAND, INC. IN CONTEMPT
<u>FOR VIOLATION OF THE AUTOMATIC STAY AND FOR RELATED RELIEF</u>**

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.[1]
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 654-0248
Facsimile:  (302) 654-0728
E-mail:  loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance
Designers of Maryland, Inc.*

DATED: February 6, 2007

---

[1] Formerly Loizides & Associates.

070131163412.DOC

# TABLE OF CONTENTS

I.      ADJUDICATION OF THE STAY MOTION REQUIRES A SUBSTANTIAL AND MATERIAL CONSIDERATION OF BOTH BANKRUPTCY AND NON-BANKRUPTCY FEDERAL LAW ALONG WITH THE CONFLICTING PRINCIPLES OF THE FIRST AMENDMENT AND THE BANKRUPTCY CODE......................1

II.     WHETHER THE STAY MOTION IS CORE OR NON-CORE IS NOT RELEVANT TO WHETHER THE REFERENCE MUST BE WITHDRAWN............5

III.    MOVANTS ARE NOT ATTEMPTING TO DELAY THE STAY MOTION AND REQUEST THAT IT BE HEARD ON AN EXPEDITED BASIS....................6

IV.     IF THE REFERENCE IS WITHDRAWN AS TO MR. COHEN, IT SHOULD BE WITHDRAWN AS TO IDMD...................................................................7

# TABLE OF AUTHORITIES

### Federal Cases

AT&T v. Chateauguy Corp., 88 B.R. 581, 588 (S.D.N.Y. 1988) .................................................. 3
In re Avtex Fibers-Front Royal, Inc., No. 90-0510, 1991 WL 25460, *2 (E.D. Pa., Feb. 26, 1991) ............................................................................................................................... 1
In re Continental Airlines, 138 B.R. 442, 445 (D. Del. 1992) ................................................... 1
In re Continental Airlines, 177 B.R. 475, 479 (D. Del. 1993) ................................................... 3
In re Enron Corp., No. 04 Civ. 8177 (RCC), 2004 WL 2711101, *2 (S.D.N.Y., Nov. 23, 2004) ...................................................................................................................................... 2
In re Gulf Coast Orthopedic Center, 20 B.R. 258, 261-62 (Bankr. M.D. Fla 1997) ................. 3
In re National Service, 742 F.2d 859, 860 (5th Cir. 1984) ........................................................ 3
In re Revere Copper & Brass, Inc., 172 B.R. 192 (S.D.N.Y. 1994) .......................................... 3
In re Sechuan City, 96 B.R. 37, 43 (E.D. Pa. 1989) ............................................................... 2, 3
In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986) ...................................... 2, 3

### Federal Statutes

28 U.S.C. § 157(a) ...................................................................................................................... 5
28 U.S.C. § 157(b)(2)(B) ............................................................................................................ 5
28 U.S.C. § 157(d) .................................................................................................................. 4, 5

I. **ADJUDICATION OF THE STAY MOTION[1] REQUIRES A SUBSTANTIAL AND MATERIAL CONSIDERATION OF BOTH BANKRUPTCY AND NON-BANKRUPTCY FEDERAL LAW ALONG WITH THE CONFLICTING PRINCIPLES OF THE FIRST AMENDMENT AND THE BANKRUPTCY CODE.**

The Debtor appears to concede that adjudication of the Stay Motion requires consideration of both law under title 11 and other non-bankruptcy federal law. See Debtor's Response, D.I. 276, pp. 5-6. Debtor opposes mandatory withdrawal based only on its position that the First Amendment issues presented are "straightforward" rather than "substantial and material." See In re Continental Airlines, 138 B.R. 442, 445 (D. Del. 1992) (denying motion to withdraw reference based in part on mere contract claim involving a federal agency). Movants might hope that this Court would find that it is "straightforward" that the First Amendment protects them; however, delimiting the scope of the First Amendment against a federal statute such as the Bankruptcy Code is anything but "straightforward." Indeed, this case presents an archetypical example of a direct conflict between the Bankruptcy Code and the First Amendment—precisely the type of direct conflict that Congress believed should be adjudicated by the District Court.

Preliminarily, while Debtor's exposition of the law is generally accurate, it should be stressed that at least one court has held that consideration of the Bankruptcy Code and the United States Constitution automatically mandates withdrawal of the reference. In re Avtex Fibers-Front Royal, Inc., No. 90-0510, 1991 WL 25460, *2 (E.D. Pa., Feb. 26, 1991) ("the ultimate non-Code law is the United States Constitution, and consideration of that law mandates withdrawal."). Even if consideration of a constitutional provision does not automatically require withdrawal, the importance of the Constitution, and in

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Movants' Motion to Withdraw the Reference, D.I. 234.

particular the leading provision of the Bill of Rights, at a minimum weighs in favor of withdrawal.

In assessing the significance of the constitutional issues presented, it is necessary to understand the legal arguments in the underlying dispute. Oddly, the Debtor takes Movants to task for addressing those legal arguments. It is conceptually impossible, however, to separate the importance and difficulties of the First Amendment issues presented without analyzing the underlying legal dispute, particularly the state of the conflicting existing legal authority. As noted in Movants' opening brief, case law considering the interaction of the First Amendment and the automatic stay is surprisingly sparse. It is also not uniform, with cases coming out different ways on very similar facts. E.g. Compare In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986) (parking truck with words "Crime Doesn't Pay, Stonegate Alarms the Same Way" was protected speech) with In re Sechuan City, 96 B.R. 37, 43 (E.D. Pa. 1989) (posting of signs that on premises that said, *inter alia,* "PLEASE DO NOT PATRONIZE THIS BUSINESS—THIS RESTAURANT IS UNFAIR TO MANAGEMENT—IT DOES NOT PAY ITS BILLS" was *not* protected speech). While it is certainly *not* necessary that this dispute present a case of first impression, mandatory withdrawal is appropriate where consideration of the issues is not well trodden by the courts. See In re Enron Corp., No. 04 Civ. 8177 (RCC), 2004 WL 2711101, *2 (S.D.N.Y., Nov. 23, 2004) (exhibit "A" hereto) (in granting defendant's motion to withdraw the reference on mandatory grounds, court states that "To satisfy the substantial-consideration test, proceeding need not be unsettled or involve matters of 'first impression'"). The relative dearth of authority speaks strongly in favor of withdrawal. Moreover, neither party has located any directly applicable authority in Delaware or at the level of the Third Circuit

Court of Appeals. Hence, this dispute may present a case of first impression at least in this District.

Cases also speak of an alternative basis for mandatory withdrawal, i.e. a *conflict* between the Bankruptcy Code and other applicable federal law. See, e.g., AT&T v. Chateauguy Corp., 88 B.R. 581, 588 (S.D.N.Y. 1988) (granting mandatory withdrawal of the reference due to conflict between CERCLA and discharge provisions of the Bankruptcy Code); contrast to In re Revere Copper & Brass, Inc., 172 B.R. 192 (S.D.N.Y. 1994) (determining when CERCLA claim arose did not present a "substantial and material" question of federal law). Indeed, resolving conflicts between the Bankruptcy Code and other non-bankruptcy federal law must be presumed to be one purpose behind the enactment of the provision requiring mandatory withdrawal.

This case presents a perfect example of such conflict. The automatic stay is one of the central provisions of the Bankruptcy Code. In re Continental Airlines, 177 B.R. 475, 479 (D. Del. 1993) (recognizing automatic stay as a "fundamental" protections of the bankruptcy laws). At the same time, few Americans would doubt that there is any provision of our Constitution more central to our freedom than the First Amendment. Here, the purposes and policies of the First Amendment and the Bankruptcy Code directly collide. The purpose of the automatic stay is to protect the debtor and enable reorganizations. So broad is its application that as noted in Movants' opening brief, courts have recognized that it can extend to speech in certain instances. See, e.g., In re Sechuan City, supra. On the other hand, courts have also recognized that the automatic stay cannot be so broad as to run afoul of the protections of the First Amendment. See, e.g., In re National Service, 742 F.2d 859, 860 (5th Cir. 1984); In re Gulf Coast

Orthopedic Center, 20 B.R. 258, 261-62 (Bankr. M.D. Fla 1997); In re Stonegate Services, Inc., 56 B.R. 1014, 1019 (N.D. Ill. 1986).

The reach of the automatic stay can extend no farther than the boundary drawn by our right to free speech. The resolution of this case mandates mapping that boundary beyond which the automatic stay cannot reach due to the First Amendment. As the sparse but divided authority in this area shows, that task is anything but "straightforward" and implicates a "material and substantial" consideration of the First Amendment *vis a vis* the Bankruptcy Code—precisely the type of situation that Congress must have envisioned in enacting 28 U.S.C. § 157(d). Indeed, this is not a case where, for example, the Debtor has asserted different unrelated causes of action, some of which arise under non-bankruptcy federal law. Rather, this case presents a classic instance of a direct conflict in the policies of two federal laws. If the First Amendment protects the Movants, then they cannot have violated the automatic stay.

Finally, Debtor makes much of the fact that Movants have not located a case granting mandatory withdrawal of the reference in the context of the First Amendment. By the same token, Debtor has not located any case *denying* a motion to withdraw the reference based on the First Amendment. The fact that the parties have found no case deciding this issue one way or another again shows that the issue of the conflict between the automatic stay and the First Amendment has not been extensively litigated. It certainly does not show the absence of substantial and material issues under the First Amendment.

As this dispute necessarily requires a substantial and material consideration of two federal laws that are in direct conflict, the reference must be withdrawn.

II. **WHETHER THE STAY MOTION IS CORE OR NON-CORE IS NOT RELEVANT TO WHETHER THE REFERENCE MUST BE WITHDRAWN.**

Debtor argues that because the Stay Motion is a "core" proceeding under 28 U.S.C. § 157(a), mandatory withdrawal of the reference is not warranted. Debtor's Response, p. 7. Debtor's argument misses the mark. Whether a proceeding is "core" or not has nothing to do with whether the reference *must* be withdrawn due to important issues of federal law. To the contrary, because mandatory withdrawal only applies where there are issues arising under the Bankruptcy Code, mandatory withdrawal would tend to arise in "core" proceedings. E.g. In re Enron, 2004 WL at **1-2 (reference withdrawn to consider jurisdictional challenge under FERC in a proceeding that involved an objection to claim (core under 28 U.S.C. § 157(b)(2)(B)), determination of secured status (core under § 157(b)(2)(K)); and turnover of property of the estate (core under § 157(b)(2)(E)). In enacting the mandatory withdrawal provisions of 28 U.S.C. § 157(d), Congress surely contemplated that there would be substantial tension between the Bankruptcy Code and other non-bankruptcy federal law. A proceeding that is "non-core", i.e. one peripheral to the Bankruptcy Code or process, is not likely to invoke a direct conflict with non-bankruptcy law. If anything, the fact that the Stay Motion is a "core" proceeding supports withdrawal of the reference precisely because of the direct tension between a core bankruptcy concern and a cornerstone of Constitutional liberty.

Debtor also argues that because Bankruptcy Courts have been able to hear and adjudicate First Amendment issues, the reference need not be withdrawn. The fact that certain First Amendment issues have been adjudicated by certain Bankruptcy Courts is wholly irrelevant. The mandatory withdrawal provisions of 28 U.S.C. § 157(d) are not jurisdictional. Indeed, the statute makes plain that withdrawal of the reference is

appropriate only upon "timely motion." It may be that the respondents in the cases cited in Movants' opening brief never moved to withdraw the reference. Or it may be that no stay pending a determination of the motion to withdraw was entered in time. The precise procedural history of these cases is simply irrelevant to the issue at hand—the substantial issues under the First Amendment and the Bankruptcy Code.

### III.    MOVANTS ARE NOT ATTEMPTING TO DELAY THE STAY MOTION AND REQUEST THAT IT BE HEARD ON AN EXPEDITED BASIS.

Debtor alleges without any support that Movants filed the Withdrawal Motion for purposes of delay. Nothing could be further from the truth. During the pendency of the Stay Motion, the Movants are bound by the onerous terms of the Stipulation and Order that prohibits Movants, subject to certain exceptions, even from communicating with anyone about Resort. Indeed, if this Court were to withdraw the reference, to the extent permitted by the Court's docket, Movants would respectfully request that this matter be heard on an expedited basis.[2]

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[2] Movants do not mean to suggest that there is an emergency and fully appreciate the fact that the Court has many important matters pending that will take precedence over this matter.

## IV. IF THE REFERENCE IS WITHDRAWN AS TO MR. COHEN, IT SHOULD BE WITHDRAWN AS TO IDMD.

IDMD's request that the reference be withdrawn as to the claim against IDMD is predicated on withdrawal being granted as to Mr. Cohen. If the claims against Mr. Cohen are withdrawn, it would be an extraordinary waste of judicial resources to permit the claim against IDMD to proceed separately before the Bankruptcy Court.

DATED: February 6, 2007

<br>

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:   (302) 654-0728
E-mail:      loizides@loizides.com

*Counsel for Jeffrey B. Cohen and Insurance Designers of Maryland, Inc.*

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Briefs and Other Related Documents
In re Enron Corp.S.D.N.Y.,2004.Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re ENRON CORP., et al., Debtors,
ENRON POWER MARKETING, INC., Plaintiff,
v.
CALIFORNIA POWER EXCHANGE CORP., Pacific Gas & Electric Co., and Southern California Edison Co., Defendants.
No. 04 Civ. 8177(RCC).

Nov. 23, 2004.

OPINION & ORDER
CASEY, J.

*1 Defendants California Power Exchange Corp. ("CalPX"), Pacific Gas & Electric Co. ("PG & E"), and Southern California Edison Co. ("SCE") move for an order withdrawing the reference of the above-captioned adversary proceeding, Adv. Pro. No. 04-3091(AJG), to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), in accordance with 28 U.S.C. § 157(d). Plaintiff and debtor Enron Power Marketing, Inc. ("Enron") opposes Defendants' motion. For the following reasons, the motion to withdraw is GRANTED.

I. BACKGROUND

Prior to seeking relief in the Bankruptcy Court in 2001,[FN1] Enron participated in wholesale power markets operated in the State of California by CalPX, a public utility regulated by the Federal Energy Regulatory Commission ("FERC"). In accordance with a tariff-and-rate schedule approved by the FERC, Enron arranged for several banks to post letters of credit in favor of CalPX. (See Defendants' Mem. Supp. Motion to Withdraw, Oct. 1, 2004 ("Mem. Supp."), Ex. 1, CalPX FERC Electric Service Tariff No. 2 ("CalPX Tariff"), June 7, 2000, Schedule 2 § 2 (requiring market participants to "post collateral for 100% of its requirements in excess of the unsecured line of credit"); id. § 2.1 (allowing "collateral" to take the form of cash, surety bonds, parent guarantees, or letters of credit).) In January 2001 and November 2001, as the letters of credit posted by Enron were about to expire, CalPX drew down approximately $136 million on them.

> FN1. Enron petitioned for relief under chapter 11 of the Bankruptcy Code on December 2, 2001; the Enron bankruptcy proceedings are pending before the Honorable Arthur J. Gonzales.

On October 10, 2002, CalPX filed Proof of Claim No. 9112 in Enron's bankruptcy case before Judge Gonzales, asserting that the approximately $136 million in letter-of-credit proceeds, which CalPX is currently holding in a segregated escrow account, secure a $16,221.36 market-activity claim against Enron as well as "other amounts to which CalPX is entitled under applicable law and the [CalPX] Tariff." The FERC has ordered that CalPX retain collateral posted under the CalPX Tariff pending completion of certain FERC proceedings. See infra pp. 5-6.

On May 26, 2004, Enron filed an adversary complaint and objection to the proof of claim in the Bankruptcy Court, seeking turnover of the letter-of-credit proceeds. (See Enron's Adversary Complaint and Objection to CalPX's Proof of Claim, May 26, 2004 ("Complaint") at ¶¶ 1-3.) Specifically, Enron seeks a judgment from the Bankruptcy Court declaring that the approximately $136 million in letter-of-credit proceeds are the property of the Enron bankruptcy estate and that CalPX lacks a valid, perfected security interest in the funds. (Id. at ¶¶ 1-2, 11, 47.)

Two motions to dismiss and one motion for summary judgment have been filed in the matter before Judge Gonzales. On July 1, 2004, CalPX moved to dismiss Enron's complaint in the underlying adversary proceeding on the ground that the Bankruptcy Court lacks subject matter **jurisdiction**-arguing that such **jurisdiction** properly lies with the FERC, not the federal courts, because Enron's claims turn on the tariff-and-rate schedule, approved by the FERC pursuant to the FERC's exclusive **jurisdiction** under the Federal Power Act, 16 U.S.C. § 824 et seq. On August 26, 2004, with Enron's **consent**, SCE and PG & E were allowed to intervene as defendants. As their responsive pleading, SCE and PG & E filed a motion to dismiss on four grounds: that the

Bankruptcy Court lacks subject matter jurisdiction; that Enron's claims are barred by res judicata; that Enron's complaint represents an improper collateral attack on the CalPX Tariff as interpreted by the FERC; and that the Bankruptcy Court should defer to the FERC under the doctrine of primary jurisdiction. On September 27, 2004, Enron filed a motion for partial summary judgment.

*2 On October 18, 2004, CalPX, PG & E, and SCE ("Defendants") filed this Motion to **Withdraw** the **Reference** to the Bankruptcy Court in accordance with Federal Rule of Bankruptcy Procedure 5011, requesting that this Court grant either **mandatory** or discretionary **withdrawal** under 28 U.S.C. § 157(d). The Court heard oral argument on this motion on November 18, 2004.

II. DISCUSSION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(d). Under a standing order issued in July 1984 by then-Acting Chief Judge Ward pursuant to 28 U.S.C. § 157(c), Chapter 11 cases in the Southern District of New York are automatically referred to the Bankruptcy Court. *See Enron Corp. v. Belo Co. (In re Enron Corp.),* No. 04 Civ. 1861(MBM), 2004 WL 2480405, at *1 (S.D.N.Y. Nov. 4, 2004); *Enron Power Marketing, Inc. v. Holcim, Inc (In re Enron Corp.),* No. 04 Civ. 509(MBM), 2004 WL 2149124, at *2 (S.D.N.Y. Sept. 23, 2004); *see also* 28 U.S.C. § 157(a) (indicating that the Bankruptcy Court derives its authority from the reference of the district court). A party can move to **withdraw** the **reference** to the Bankruptcy Court under 28 U.S.C. § 157(d), which provides for both discretionary and **mandatory withdrawal**:

The district court *may* **withdraw**, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall,* on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added). Defendants move for both **mandatory** and permissive **withdrawal** of the **reference** of the adversary proceeding to the Bankruptcy Court.

The **mandatory-withdrawal** provision of 28 U.S.C. § 157(d) requires **withdrawal** of the **reference** to a bankruptcy court for any proceeding "that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991). "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code." *Eastern Airlines, Inc. v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* No. 89 Civ. 8250(MBM), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990). Courts in this Circuit have construed § 157(d) narrowly to prevent litigants using it as an "escape hatch" out of bankruptcy court. *In re Enron,* 2004 WL 2149124, at *4. Mandatory withdrawal is appropriate, however, in "cases where substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 995 (2d Cir.1990) (internal quotation marks and citation omitted). To satisfy the substantial-consideration test, the issues of non-bankruptcy law raised by the proceeding need not be unsettled or involve matters of "first impression." *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.),* 160 B.R. 502, 505 (S.D.N.Y.1993) (noting that what is at issue is "the *degree* to which the bankruptcy judge would have to consider the federal [non-bankruptcy] law" (emphasis added)). It is not clear that only a "simple application" of federal non-bankruptcy law is required of the Bankruptcy Court here. *See Exxon,* 932 F.2d at 1026.

*3 The CalPX Tariff under which the letters of credit were initially posted indicates that the collateral was meant to cover settlement of each market participant's outstanding liabilities in the CalPX-administered power markets. *Id.* § 2.2 (declaring that participants "shall maintain sufficient collateral to cover the estimated potential ... aggregate outstanding liabilities to and from [CalPX] between cash clearing cycles or during the true-up period in which the liabilities are incurred and when payment is billed and settled"); *id.* § 2.3 (declaring that participants' market activity would be reviewed daily and compared to posted collateral to ensure that each participant met the collateral requirement). Federal tariffs "have the force of [federal] law and are not simply contractual." *AT & T v. City of New York,* 83 F.3d 549, 552 (2d Cir.1996).

On July 30, 2002, the FERC interpreted Schedule 2,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00106-JJF   Document 3-2   Filed 02/22/2007   Page 4 of 5

Not Reported in F.Supp.2d                                                                                                 Page 3
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Section 2.2 of the CalPX Tariff in *Constellation Power Source, Inc. v. Cal. Power Exch. Corp.*, 100 F.E.R.C. ¶ 61,124, 2002 WL 1764921, to deny a market participant's request that the FERC direct CalPX to release three letters of credit that had been provided as collateral under the CalPX Tariff, stating: [T]he disbursement of the collateral, or any disposition of jurisdictional property ... must be consistent with the CalPX tariff and, to the extent applicable, subject to review and approval by this Commission under Section 203 of the FPA.

*Id.* ¶ 48; *see also id.* ¶ 12, 27-28 (directing the order to all CalPX market participants on the ground that the "billed and settled" language in the CalPX Tariff required collateral to be retained pending the FERC's determination of outstanding liabilities arising from the California energy crisis).

The FERC has denied several requests from individual market participants to release CalPX collateral and funds on the ground that proper allocation cannot be made until the FERC resolves who owes what to whom in the wake of the California energy crisis. *See Pacific Gas & Electric Co. v. F.E.R.C.*, 373 F.3d 1315, 1317 (D.C.Cir.2004) (noting further that those denials by the FERC are currently on appeal to the D.C. Circuit); *see also Pacific Gas & Electric Co. v. Cal. Power Exch. Corp.*, 109 F.E.R.C. ¶ 61, 027, 2004 WL 2260894, ¶ 47 (Oct. 7, 2004) ("[T]he disbursement of funds should wait until a final computation of who owes what to whom ."); *Powerex Corp. v. Cal. Power Exch. Corp.*, 102 F.E.R.C. ¶ 61,328, 2003 WL 1605933, ¶ 38 (Mar. 27, 2003) (denying a market participant's request to direct CalPX to release a letter of credit posted as collateral under the CalPX Tariff). The FERC's interpretation of the tariff is that the CalPX collateral covers "outstanding liabilities" arising from CalPX market transactions, including as-yet-to-be-determined refunds:
Based on our review of CalPX's tariff, we find that the tariff language provides a basis for retaining the collateral, since outstanding liabilities have not been billed and settled, as required by the tariff. Under the provisions of CalPX's tariff, a market participant is required to post collateral as security for potential defaults arising from this participant's failure to pay its outstanding liabilities to CalPX. Outstanding obligations are not extinguished until they are billed and settled.... [T]he final billing and settlement has not yet taken place given the numerous ongoing contested proceedings regarding the transactions that occurred in the CalPX markets.... Only after its completion can the Commission begin to determine the liabilities of each supplier. Until those figures are determined, the process of final billing and settling cannot start.

*4 *PG & E Trading-Power, LP v. Cal. Power Exch. Corp.*, 102 F.E.R.C. ¶ 61,091, 2003 WL 245787, ¶ 14 (Jan. 30, 2003). In requesting that the Bankruptcy Court order CalPx to turn over the letter-of-credit proceeds, Enron invites the Bankruptcy Court to interpret the CalPX Tariff contrary to repeated FERC orders that CalPX retain collateral until all outstanding obligations are billed and settled.

As a threshold issue, it must be determined who has jurisdiction over the collateral at issue. Such a determination requires an examination of the interrelation between the bankruptcy and federal energy regulatory laws and the spheres of authority that enforce those laws. Under the Federal Power Act, the FERC has the exclusive authority to pass upon the reasonableness of the structure, terms, and conditions pertaining to the sale and distribution of wholesale electric rates, *see* 16 U.S.C. § § 824, 824d and 824e, but Enron casts its requested relief in non-regulatory terms and asserts that the Bankruptcy Court is confronted with a simple bankruptcy case-nothing more than a contractual dispute between the parties raising security-interest issues-such that the Bankruptcy Court can make the determination of whether to turn over the proceeds "under the provisions of the Bankruptcy Code governing secured claims, applicable nonbankruptcy law, and the terms of [Enron's] contractual agreements with [CalPX]."

A federal district court in Texas recently granted a defendant's motion to withdraw the reference from bankruptcy court in a case with virtually identical facts. *See Mirant Americas Energy Marketing, LP v. Pacific Gas & Electric Co. (In re Mirant Corp.)*, No. 04-CV-557-A, slip op. at 2 (N.D.Tex. Oct. 22, 2004). In *Mirant,* a participant in the California energy markets that had deposited $333,905.34 as "collateral" under the CalPX Tariff filed a complaint against CalPX in its bankruptcy case, Adv. Proc. No. 04-4242 (Bankr.N.D.Tex.), seeking an order directing CalPX to turn the collateral over, despite FERC orders "that no distributions be made until [the FERC's] further order." *Id.* In withdrawing the reference, the district court concluded that "the bankruptcy court would necessarily have to consider the Federal Power Act in ruling on the adversary complaints" and that such consideration would be "more than *de minimis.*" *Id.* at 1-2.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

The Bankruptcy Court cannot adjudicate this objection and determine whether the letter-of-credit proceeds must be turned over to Enron's bankruptcy estate without substantial and material consideration of federal law beyond Title 11 to determine, at the outset, whether the funds at issue fall within the FERC's exclusive jurisdiction or whether this is a garden-variety bankruptcy case. Accordingly, Defendants' motion to **withdraw** the **reference** is granted on **mandatory-withdrawal** grounds so that this Court may resolve the threshold jurisdictional issues in accordance with applicable non-bankruptcy federal law. The Court need not address the parties' permissive-withdrawal arguments in light of its decision.

### III. CONCLUSION

*5 For the aforementioned reasons, Defendants' Motion to Withdraw the Reference of this adversary proceeding to the Bankruptcy Court is GRANTED.

S.D.N.Y.,2004.
In re Enron Corp.
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:04cv08177 (Docket) (Oct. 18, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.